**Oscar Emilio ARCILA, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 382–90.

Court of Criminal Appeals of Texas, En Banc.

June 24, 1992.

John H. Hagler (on appeal only), Dallas, for appellant.

John Vance, Dist. Atty., Yolanda M. Joosten and Shannon Ross, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

BENAVIDES, Judge.

Appellant was convicted of possessing cocaine and sentenced to 35 years of confinement in the penitentiary and a fine of $1,000. On direct appeal, he urged reversal of the conviction for failure of the trial court to suppress the physical evidence seized from his residence, claiming that his consent to search, given only after he had been illegally arrested, was not voluntary. The Fifth Court of Appeals agreed that appellant's arrest was illegal under Texas law, but concluded that seizure of the cocaine was not unlawful because appellant voluntarily consented to the search. *Arcila v. State,* 788 S.W.2d 587 (Tex.App.— Dallas 1990). We granted discretionary review to determine whether the lower court's analysis should have included a separate inquiry concerning attenuation of any taint from the illegal arrest, and to decide whether, in appellant's words, "the Court of Appeals erred in holding that the evidence established that the Appellant freely and voluntarily consented to the search of his residence." Appellant's PDR, p. 8. We address these issues separately.

### I.

Questions of voluntariness and attenuation of taint are closely related. Considerations officially applicable to one are almost

invariably relevant to the other as well. *See Miller v. State*, 736 S.W.2d 643, 649–651 (Tex.Cr.App.1987). Thus, although appellant cast his complaint on appeal in terms of voluntariness, the factual context in which it was embedded seemed also to call for some assessment of the degree to which his consent might have been induced by illegal police activity. *See Reyes v. State*, 741 S.W.2d 414, 430–431 (Tex.Cr. App.1987). The Dallas Court of Appeals did, in fact, analyze the problem that way. But because this Court has for some time taken the position that an attenuation analysis is logically distinct from one involving only questions of voluntariness, it might be suggested that the lower court's evaluation of appellant's claim in this cause was incomplete.

■ When complaint is made on appeal that evidence should have been suppressed because the product of unattenuated official illegality, the appellate court may not conclude its analysis with a discussion of voluntary consent alone, but must specifically evaluate the impact of constitutionally prescribed factors upon the degree to which exploitation of the illegality was attenuated by such consent or by other intervening events and circumstances. *Brick v. State*, 738 S.W.2d 676 (Tex.Cr.App.1987). *See also Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). On the other hand, consideration of these factors, although relevant, may not be constitution-

ally required under a pure voluntariness analysis. Consequently, one kind of inquiry is not necessarily dispositive of questions appropriate to the other, in spite of considerable overlap.

■ We adhere to our established approach in the instant cause, but do not regard the appellate court's failure to discuss the attenuation problem separately as a shortcoming in the present context. Appellant makes no complaint before this Court, nor did he previously before the trial and appellate courts, that his consent to search, even if voluntary, was nonetheless rendered ineffective by unattenuated police illegality. Rather, it has been his only contention from the beginning that consent was not given voluntarily.[1] To the extent that illegal police conduct affected this question, the court of appeals appears to have given it due consideration. It was not necessary that the appellate court separately decide whether the taint of illegality was attenuated, as appellant did not raise the issue on appeal.

II.

Events leading to the seizure of cocaine from appellant's residence are well summarized in the Court of Appeals opinion. Suffice it to say here that appellant was one of several persons suspected by law enforcement officers of planning a contract killing

---

1. Judge Baird's dissent reads appellant's complaint somewhat more expansively than we think it deserves. It is true that appellant, and the Court of Appeals, discussed the "taint" of police illegality and the extent to which it was "attenuated" in this case. But it is equally clear that both considered such conduct only insofar as it might actually have coerced appellant's consent to search, and not to determine the separate question whether the consent to search, even if given voluntarily, was itself a product of the illegality. It is clear from our precedents that these are, indeed, different questions. *See Brick*, 738 S.W.2d at 680. Thus, we find puzzling the dissent's citation of *Brick* for the proposition that fruits of a consensual search are never admissible unless the consent is voluntary *and* any taint of illegality is dissipated. That may be true in cases such as *Brick* where the appellant actually complained on appeal that "consent to the warrantless search ... was obtained through an exploitation of his

illegal arrest[.]" *Brick*, 738 S.W.2d at 676. *Reyes, Juarez,* and *Miller,* also relied upon by the dissent, are in the same posture. *See Reyes,* 741 S.W.2d at 428; *Juarez v. State,* 758 S.W.2d 772, 773 (Tex.Crim.App.1988); *Miller,* 736 S.W.2d at 646. But, here, the Court of Appeals rightly characterized appellant's only complaint on appeal as a contention "that the trial court should have granted his motion to suppress evidence because he did not freely and voluntarily consent to the search of his house." Since *Brick* itself establishes that these two complaints are different in law, the dissent is mistaken to rely upon *Brick* for the proposition that both complaints are automatically raised by the assertion of either. Our rules of procedural default require greater specificity than this. Accordingly, given the manner in which appellant cast his complaint on appeal, we do not think the lower court was in error to treat it purely as an issue of voluntariness.

in Dallas. In an effort to apprehend those responsible and to prevent commission of the crime, a combined law enforcement team from Houston and Dallas monitored progress of the conspiracy with cooperation of the proposed hit man, acting as a police informant. Early in the morning, while following the informant and his employers as they drove toward appellant's house, the police grew concerned for the informant's safety and stopped the car in which he was riding before its arrival. Much of the team, including about a dozen policemen, six patrol vehicles, and a helicopter, then proceeded to the vicinity of appellant's house. While the others kept their distance, three or four officers approached the door, awakened appellant, identified themselves, and were invited inside. Then, without benefit of a warrant or any adequate excuse for failure to obtain one, they placed appellant under arrest for conspiracy to commit capital murder. Before transporting him to jail, however, the police told appellant that they also suspected him of possessing illegal drugs in the house, based on information earlier communicated by their informant. Although warned of his right to remain silent and to withhold consent, appellant readily admitted to having cocaine, signed a form authorizing the officers to search for it, and then directed them to its precise location in the house. By all accounts, he was not treated harshly, nor was he subjected to pressures beyond those necessarily attending a full custodial arrest. Although more police officers later entered the premises, appellant was evidently unaware of others surrounding his house from the outside.

While we would not be at all surprised to find that appellant's consent was actually involuntary in this case, we are unable to aver as a matter of law that consent is necessarily involuntary under such circumstances. Hence, the question for this Court on discretionary review is not wheth-

er the Court of Appeals was correct, as an empirical matter, but whether it fairly evaluated the voluntariness of appellant's consent, using the correct legal standard, considering all relevant evidence in the record, and affording proper deference to the trial judge as primary factfinder. We are persuaded that it did.

This is not to say that we approve the police procedures employed in this case. Indeed, we agree with the Court of Appeals that appellant's arrest was undoubtedly a violation of Texas law. Moreover, it is possible that a majority of this Court, acting as appellate judges, would also have held appellant's consent to search involuntary. But we do not reach that issue here. Like this Court, the courts of appeals are duty-bound to uphold the constitution and laws of this State and of the United States. So long as it appears that they have discharged that duty conscientiously by impartial application of pertinent legal doctrine and fair consideration of the evidence, it is our duty in turn to respect their judgments. Our principal role as a court of last resort is the caretaker of Texas law, not the arbiter of individual applications. When different versions of the law, including unsettled applications of the law to significantly novel fact situations, compete for control of an issue, it is finally the job of this Court to identify and elaborate which is to control thereafter. But, except under compelling circumstances, ultimate responsibility for the resolution of factual disputes lies elsewhere. *See Meraz v. State*, 785 S.W.2d 146, 152–154 (Tex.Cr. App.1990) (Courts of appeals are the final arbiters of fact questions); *Meeks v. State*, 692 S.W.2d 504, 510 (Tex.Cr.App.1985) (Voluntariness of consent is a fact question).[2]

■ In the instant cause, the lower court's analysis was more than adequate. Factors militating both in favor of and

---

**2.** Our holding is not an interpretation of this Court's constitutional jurisdiction. Although the Texas Constitution does confer different authority upon this and upon the lower appellate courts, we have not yet fully explored the limit of our own power under the Constitution to review decisions of the courts of appeals, and

we do not purport to do so here. Rather, we mean to establish a general rule of restraint, insofar as our discretionary review function is concerned, which will largely leave business of basic appellate review to the intermediate courts.

against a finding of voluntariness were set out side-by-side in its opinion. A thorough review of federal and state decisional law was included. In both respects, it appears that the court's assessment of the case was exemplary. Certainly neither party claims that relevant evidence or applicable law was ignored, manufactured, or misunderstood.

■ Thus, the only basis for complaint here is that the Dallas Court of Appeals somehow managed to get it wrong. Even if our own decision might have been different on the question presented, we cannot accept the proposition that an appellate court's judgment ought to be subject to reversal on such basis, at least when the evidence is sufficient to support it. Doing so only tends to undermine the respective roles of this and the intermediate courts without significant contribution to the criminal jurisprudence of the State. This Court should reserve its discretionary review prerogative, for the most part, to dispel any confusion generated in the past by our own case law, to reconcile settled differences between the various courts of appeals, and to promote the fair administration of justice by trial and appellate courts throughout Texas. *See* Tex.R.App.P. 200(b), (c); *DeGrate v. State*, 712 S.W.2d 755 (Tex.Cr. App.1986).

In the instant cause, we have examined the Dallas Court's opinion with some care. It fairly addresses the issues raised on appeal, evaluates those issues according to settled rules of law, accounts for all evidence relevant to the questions presented, and reaches a conclusion adequately supported by the law and the evidence. Appellant himself does not claim otherwise, but apparently hopes that an independent re-evaluation of the question by this Court will favor his position. Here, we decline, to substitute our own judgment on ultimate questions of fact for that of the lower courts. Appellant's ground for review is overruled, and the Court of Appeals judgment affirmed.

CLINTON, Judge, concurring.

I join the opinion of the majority in this cause, and write separately only to highlight and supplement a point made in Part I therein, *viz:* that a claim that a warrantless search based upon purported consent is illegal because the consent was not rendered voluntarily is conceptually distinct from a claim that evidence obtained in a search is inadmissible because the tainted product of an illegal arrest. *Brick v. State*, 738 S.W.2d 676 (Tex.Cr.App.1987). To be sure, where purported consent to search follows on the heels of an arrest, either or both claims may be raised in a pretrial suppression context. But a claim that the consent to search was the product of an illegal arrest must be raised distinctly from a claim that the consent was involuntary, or else rules of procedural default will come into play. Moreover, the former claim must be distinctly raised on appeal to insure appellate review. And that which the appellate court does not decide, whether because it was not raised in the court of appeals, or because it was raised there but that court found it was not preserved at the trial level, this Court does not review.[1]

In the court of appeals appellant raised only the issue of the voluntariness of his consent. He did not independently claim that his purported consent, and the evidence obtained from the search based upon it, were the product of an illegal arrest. The court of appeals expressly decided "that the evidence supports the conclusion

---

1. In *Brick* the court of appeals persisted in treating the defendant's claim as one of voluntariness of the consent, and resolved it in those terms, even though at trial and on appeal the defendant conceded voluntariness of the consent but insisted that consent was not the issue he was contesting. 738 S.W.2d at 677–78. We held that, the question of exploitation of the illegal arrest having been expressly raised at trial and brought up on appeal, the court of appeals was obliged to address it, and remanded the cause accordingly. We did not hold, as Judge Baird's dissent suggests, that a claim of involuntary consent will automatically suffice to raise an issue of taint from an illegal arrest. See also *Juarez v. State*, 758 S.W.2d 772 (Tex.Cr. App.1988) (in reviewing claim that consent was itself an exploitation of an illegal arrest, this Court applied test enumerated in *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)).

that appellant's consent was freely and voluntarily given, thereby rendering admissible the evidence seized pursuant to that consent." *Arcila v. State*, 788 S.W.2d 587, at 593–94 (Tex.App.—Dallas 1990). In other words, the search, though warrantless, was nevertheless validated by the consent. This holding does not encompass a decision that the consent and search were the fruit of an illegal arrest, which has been deemed an "independent ground" for suppression. *United States v. Watson*, 423 U.S. 411, at 414, 96 S.Ct. 820, at 823, 46 L.Ed.2d 598, at 603 (1976).

It is true that in its analysis the court of appeals relied in part upon this Court's opinion in *Miller v. State*, 736 S.W.2d 643 (Tex.Cr.App.1987), and therein lies the source of some confusion. In *Miller* the issue was in fact whether evidence should have been suppressed as the product of a search following an illegal arrest. Miller had been arrested on the basis of a warrant supported by an affidavit lacking enough information for a neutral magistrate to find probable cause. After his arrest, in the course of a strip search, Miller pulled out a concealed pistol and, in effect, held his captors captive. Persuaded to surrender the pistol, Miller expressed a concern that his parents would find marihuana in his house, and offered to retrieve it. The police readily acceded, and in the course of events Miller also led them to proceeds from the robberies for which he had been arrested. We held that on these facts—it being "difficult to conceive of a situation that is more consensual"—the taint of the illegal arrest was sufficiently attenuated. *Id.*, at 651.

*Miller* only serves to underscore the majority's observation in this cause that where purported consent follows an illegal arrest, considerations relevant to a voluntariness analysis "are almost invariably relevant" to an attenuation of taint analysis, and vice-versa. Maj. op. at 358. Indeed, we have suggested that a complaint that a search was the product of an illegal arrest logically envelops the question whether any consent to the search was voluntary. *Brick v. State*, supra, at 679 n. 5. But the converse is not true. A complaint that a warrantless search was not validated by consent because the consent was involuntary, without more, does not embrace a claim that the consent and search were tainted by an illegal arrest.[2]

The court of appeals here concluded "that any coercion flowing from the illegality of appellant's arrest was dissipated." 788 S.W.2d at 593. Degree of real or objectively apparent coercion is an aspect of a voluntariness-of-consent analysis. Thus it is clear that the court of appeals considered the illegality of the arrest, but only to the extent it may have had a bearing on the voluntariness of appellant's consent.[3] The court of appeals did not purport to decide whether the consent was the fruit of an illegal arrest. It was not asked to, nor did it in fact conduct an analysis under the test spelled out in *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). In the premises, neither should this Court.

---

**2.** In cases decided since *Brick,* where the appellate claim has been that consent to search was tainted by a prior illegal arrest, this Court has examined the included question of voluntariness of the consent as a factor in determining attenuation of taint. See *Reyes v. State,* 741 S.W.2d 414 (Tex.Cr.App.1987); *Juarez v. State,* 758 S.W.2d 772 (Tex.Cr.App.1988). We have yet to hold that where the appellate claim is only that consent to search was involuntary, we must nevertheless reach the broader question whether the consent was tainted by a prior illegality.

**3.** In reality, it is not so much the legality, *vel non,* of an arrest that contributes to the voluntariness analysis. The fact of arrest, whether it is legal or not, is not alone dispositive of a voluntariness-of-consent claim. *Meeks v. State,* 692 S.W.2d 504 (Tex.Cr.App.1985). Much depends upon the character of coerciveness that accompanies the arrest, and this is not a function of its legality, *per se.* See *Brick v. State,* supra, at 679, n. 5. A perfectly valid arrest may be executed with such a show of force as to render refusal of consent unthinkable. Such consent would not be voluntary. On the other hand consent to search without warrant or probable cause will not be rendered involuntary simply because it was preceded by an illegal arrest. Nevertheless it is clear that the court of appeals considered the legality of appellant's arrest here as a facet of its analysis whether appellant's consent was voluntary, and to no other end.

BAIRD, Judge, dissenting.

The majority attempts to establish a broad policy of deference to the courts of appeals. According to the majority, we should act as the "caretaker of Texas Law, not the arbiter of individual applications," reserving our powers of review "to dispel any confusion generated in the past by our own case law, to reconcile settled differences between the various courts of appeals, and to promote the fair administration of justice by trial and appellate courts throughout Texas." Maj. op. pgs. 360–361. I agree that, as a general rule, we should defer to the courts of appeals when they resolve points of error by correctly applying the holdings of this Court. *See, Riley v. State*, 830 S.W.2d 584, 587 (Tex.Cr.App. 1992). Maj. op. pg. 361. However, we should not hesitate to exercise our powers of review when a court of appeals misinterprets our precedent. In such a case, we should grant review to assist the courts of appeals in their role of correctly providing appellate resolution of the issues presented on direct appeal.

While I am in general agreement with the majority's policy of deference, I am certain this is *not* the case to establish the policy. This case dramatically presents a situation where the Court of Appeals has misinterpreted our precedent; after correctly recognizing the attenuation analysis was required, the Court of Appeals failed to conduct a correct attenuation analysis. If we want to establish a policy of deference we should wait for the proper case. Today we should exercise some judicial restraint and simply address appellant's *sole* ground for review.

Because the majority refuses to wait for the proper case, I am compelled to dissent for three separate reasons. First, the majority reads appellant's ground for review as not raising the attenuation issue. Second, I would hold appellant's consent was tainted by his illegal arrest. Finally, I dissent because the majority opinion misapplies *Meraz v. State*, 785 S.W.2d 146 (Tex.

Cr.App.1990), and *Meeks v. State*, 692 S.W.2d 504 (Tex.Cr.App.1985).

## I. THE ATTENUATION ISSUE IS PRESERVED

### A.

To use this case to establish a policy of deference, the majority holds appellant waived the attenuation argument; a holding contrary to the record, the briefs and the opinion of the Court of Appeals. The majority asserts:

> Appellant makes no complaint before this Court, nor did he previously before the trial and appellate courts, that his consent to search, even if voluntary, was nonetheless rendered ineffective by unattenuated police illegality.

Maj. op. pg. 359. In the trial court, appellant moved to suppress the evidence contending "[a]ny oral or written consent to search given by [appellant] was, therefore, involuntary *and the direct result of overbearance by forces of the State.*"[1] On direct appeal (and in his petition for discretionary review) appellant argued that his consent was tainted. App. brief pg. 6; App. p.d.r. pg. 7. Further, the Court of Appeals addressed the attenuation issue. *Arcila v. State*, 788 S.W.2d 587, 591 (Tex. App.—Dallas 1990). Moreover, the State has never suggested that appellant waived the attenuation argument; rather the State addressed the merits of appellant's attenuation argument. State's brief pg. 9. Consequently, the majority errs by holding "it was not necessary that the appellate court separately decide whether the taint of the illegality was attenuated, as appellant did not raise the issue." Maj. op. pg. 359.

The majority describes appellant's argument as one of "pure voluntariness." Maj. op. pg. 359. The majority states that appellant's "only contention from the beginning" was that consent was not voluntary. Maj. op. pg. 359. However, the majority recognizes the Court of Appeals discussed the "taint" and the extent to which the taint was "attenuated" but concludes the Court of Appeals was really treating appel-

---

**1.** Unless otherwise indicated all emphasis here-   in is supplied by the author.

lant's argument "purely as an issue of voluntariness." Maj. op. pg. 359, n. 1. That conclusion is simply not supported by the record, the briefs or the opinion from the Court of Appeals.

The majority treats appellant's petition as presenting two distinct questions: (1) whether the lower court's analysis should have included a separate inquiry concerning attenuation of any taint from the illegal arrest, and (2) whether the Court of Appeals erred in holding that the evidence established that the Appellant freely and voluntarily consented to the search of his residence. Maj. op. pg. 358. My review of appellant's petition and the briefs reveal nothing to suggest that appellant complains of the Court of Appeals' separate inquiry concerning the attenuation issue. For the majority to assert, for the first time today, that this question has been raised, is to raise and resolve an issue neither briefed nor argued by the parties. To expand our scope of review without notice to the parties is patently unfair. Furthermore, we are considering *appellant's* petition. Obviously appellant is *not* contending the Court of Appeals should *not* have addressed his attenuation issue; rather his complaint is that the Court of Appeals erroneously decided the issue. The second question recognized by the majority is appellant's *sole* ground for review and our decision should be limited to that question.

#### B.

Prior to the majority's holding today there were several established principles on the issue of consent to search:[2]

1.  A search conducted without a warrant issued upon probable cause is per se unreasonable subject to only a few specifically established and well-delineated exceptions.

2.  One of the specifically established exceptions to the warrant requirement is a search conducted pursuant to consent because the protections of the Fourth Amendment and Article 1 § 9 may be waived by an individual consenting to a search.

3.  The fact that a person is under arrest does not, in and of itself, prevent a free and voluntary consent from being given. Consent to search, freely and voluntarily given, even after an illegal arrest is still one of the recognized exceptions.

4.  However, in the illegal arrest situation the *State has the burden* of proving by clear and convincing evidence that the consent was *both* voluntary *and* not an exploitation of the illegal arrest. *A finding that the consent was voluntarily given is but one step in the determination of the propriety of the search, because even if the consent were voluntary it still may be obtained by the exploitation of an illegal arrest.*

In short, if the detention is *legal* the sole issue is whether the consent was voluntary. However, if the detention is *illegal* the State must prove the consent to search was voluntary *and* establish the existence of intervening circumstances which prove the consent was sufficiently attenuated from the illegal detention. In other words, in illegal detention situations, even if the consent is voluntary, an attenuation analysis is nevertheless required because consent cannot be valid if obtained by exploitation of the illegality. Therefore, when the reviewing court determines the detention was illegal it has the obligation to determine whether the consent is voluntary and free from the taint of the illegality.

The Court of Appeals correctly recognized an attenuation was required.

This [the determination that appellant's arrest was illegal] does not mean, however, that the evidence was necessarily admitted improperly.

We must now examine the record to determine whether any *taint* was removed by appellant freely and voluntarily consenting to the search or whether

---

**2.** All of these principles are thoroughly discussed and accompanied by relevant decisional authority in *Reyes v. State,* 741 S.W.2d 414 (Tex. Cr.App.1987), and *Juarez v. State,* 758 S.W.2d 772 (Tex.Cr.App.1988).

the consent and subsequent search were *tainted* by the unlawful arrest. *Arcila*, 788 S.W.2d at 591.

Today, the majority also agrees appellant was illegally arrested. Maj. op. pg. 360. However, the majority concludes that "it was not necessary that the appellate court separately decide whether the taint of illegality was attenuated...." Maj. op. pg. 359. The majority relies on *Brick v. State*, 738 S.W.2d 676 (Tex.Cr.App.1987), however, that reliance is misplaced. In *Brick* we concluded:

> ... We hold that *before* it can be determined that evidence derived from a warrantless but consensual search following an illegal arrest is admissible, it must first be found, by clear and convincing evidence, *not only* that the consent was voluntarily rendered, *but also that due consideration of the additional factors listed above militates in favor of the conclusion that the taint otherwise inherent in the illegality of the arrest has dissipated.*

*Id.* at 681. The majority's holding today conflicts not only with *Brick*, supra, but also with *Reyes, Juarez*, and *Miller*, 736 S.W.2d 643 (Tex.Cr.App.1987).

Furthermore, if we are to establish a policy of deference, we should defer to the Court of Appeals' finding that the attenuation issue was either raised or necessary to disposition of the case. As previously mentioned, the Court of Appeals considered whether appellant's consent was tainted, *Arcila*, 788 S.W.2d at 591, and the majority concedes consideration of the issue was reasonable.

> [A]lthough appellant cast his complaint on appeal in terms of voluntariness, the factual context in which it was embedded seemed also to call for some assessment of the degree to which his consent might have been induced by illegal police activity ... The Dallas Court of Appeals did, in fact, analyze the problem that way.

Maj. op. pg. 359. The majority should respect the finding by the Court of Appeals that the issue was raised and necessary to the disposition of the case as that finding was reasonable and supported by the record in this case.

The majority discusses the importance of not second-guessing the courts of appeals. "So long as it appears that ... [courts of appeals] have discharged that duty conscientiously by impartial application of pertinent legal doctrine and fair consideration of the evidence, it is our duty in turn to respect their judgments." Maj. op. pg. 360. We should practice what we preach, defer to the finding of the Court of Appeals and address the merits of the attenuation issue.

Finally, even if the Court of Appeals was not obligated to separately address the attenuation issue, once the Court undertook to perform the analysis, it was obliged to do so correctly. Pursuant to Tex.R.App. Pro. 200(a) this Court has the authority to review the decision of the Court of Appeals. Consequently, we have the authority to consider appellant's claim that the Court of Appeals' attenuation analysis was erroneous.

## II. ATTENUATION ANALYSIS

### A.

In *Juarez v. State*, 758 S.W.2d 772 (Tex. Cr.App.1988), we adopted the four factors analysis in *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), to determine the admissibility of evidence derived from a consensual search subsequent to an illegal detention.[3] *Juarez*, 758 S.W.2d at 780. *See also, Miller*, 736 S.W.2d at 650 and *Reyes*, 741 S.W.2d at 731. The four factors are:

1. Whether *Miranda* warnings were given;
2. The temporal proximity of the arrest and the consent;
3. The presence of intervening circumstances; and
4. The purpose and flagrancy of police misconduct.

However, the Court of Appeals did *not* utilize those four factors. Rather the Court of Appeals considered nine factors in addition to appellant's illegal arrest. *Arci-*

---

3. *Brown* concerned admission of a confession after an illegal arrest.

*la,* 788 S.W.2d at 591. The majority states that appellant's "only basis for complaint here is that the Dallas Court of Appeals somehow managed to get it wrong." Maj. op. pg. 360. The Court of Appeals obviously "got it wrong" by not following our holdings in *Reyes, Juarez* and *Miller.* To hold otherwise is to ignore our own precedent. Because the attenuation issue was both raised before and erroneously resolved by the Court of Appeals, we should remand the case to the Court of Appeals for a correct attenuation analysis. *See, Juarez,* 758 S.W.2d at 785 (Clinton, J., dissenting).

### B.

I believe a correct attenuation analysis would show the following:

### 1.

It is undisputed the police gave appellant *Miranda* warnings in Spanish and appellant appeared to understand them. Although the giving of *Miranda* warnings is not dispositive with regard to taint dissipation, the warnings are a consideration. The giving of *Miranda* warnings militates in favor of attenuation.

### 2.

The second factor is the temporal proximity of the illegal arrest to the consent. The record shows that appellant was arrested immediately after the police entered his home. After giving appellant *Miranda* warnings, the officers told appellant they suspected drugs were on the premises. Appellant orally consented to a search and, ten minutes later, signed a written consent to search. *Arcila,* 788 S.W.2d at 590. Lack of a significant amount of time between an arrest and consent does not, in itself, preclude a finding of attenuation. *See, Juarez,* supra at 781, citing *United States v. Rodriguez,* 585 F.2d 1234 (5th Cir.1978), *cert. denied,* 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980), and *United States v. Wellins,* 654 F.2d 550 (9th Cir. 1981). However, it is significant that appellant's consent was given so soon after

his illegal arrest. The proximity of the illegal arrest to the consent militates against attenuation.

### 3.

The third factor relates to intervening circumstances. The only possible intervening circumstances were the officers advising appellant of his rights and appellant expressing his desire to protect his home from the effects of an unauthorized search.[4] Absent some indication, in the record, that these circumstances served to break the chain of events between appellant's illegal arrest and his consent, the circumstances are insufficient to attenuate the taint from appellant's illegal arrest. If anything, appellant's concern for his home militates against a finding of attenuation. Therefore, this factor militates against a finding of attenuation.

### 4.

The last factor to be considered is the flagrancy of police misconduct. Appellant's arrest was illegal, and the record indicates a strong police presence at the scene of appellant's arrest: one officer had his gun drawn when appellant opened the door, and a police helicopter hovered over the residence. *Arcila,* 788 S.W.2d at 590. Finally, the record does not clearly establish why the officers asked to search appellant's house for drugs; the record does not reveal a connection between the drugs and appellant's arrest for conspiracy to commit murder. The record reflects the officers wanted to take advantage of the arrest situation in order to search for the drugs. This falls into the category of cases in which the arrest had a "quality of purposefulness," and the consent was sought to justify a search for evidence unrelated to the basis for the arrest. *See, Brown,* 422 U.S. at 605, 95 S.Ct. at 2262, 45 L.Ed.2d at 428.

Thus, the record shows the officers lacked probable cause or exigent circumstances justifying a warrantless arrest, they made a strong showing of police force,

---

**4.** Officer J.M. Castillo testified that appellant asked the officers to please not tear up his home

because he was renting the house and wished for the house to remain intact. S.F., pg. 22.

and there was no connection between the arrest and the drugs the officers sought when seeking appellant's consent to search. The flagrancy of police misconduct militates strongly against attenuation of taint.

This attenuation analysis shows the taint of the illegal arrest permeated appellant's consent. Therefore, appellant's consent was not freely and voluntarily given, and the evidence obtained from the search of appellant's home should have been suppressed.

### III. MISAPPLICATION OF *MERAZ* and *MEEKS*

The majority refers to *Meraz v. State*, 785 S.W.2d 146 (Tex.Cr.App.1990), for the proposition that courts of appeals are the final arbiters of fact questions. Maj. op. at 360. That reference is incorrect. In *Meraz* we held the courts of appeals were the final judges of fact questions on issues upon which the *defendant* bears the burden of proof.

> We now join our brethren on the Texas Supreme Court and conclude that the "factual conclusivity clause," within Art. V, Sec. 6, operates to limit our jurisdiction and confers conclusive jurisdiction on the courts of appeals to resolve questions of weight and preponderance of the evidence adequate to prove a matter that the *defendant* must prove.

*Meraz*, 785 S.W.2d at 154.

It has been the established law of this State for *more than sixty years* that the *State* bears the burden of proving the consent was freely and voluntarily given. *Frazier v. State*, 119 Tex.Crim. 217, 43 S.W.2d 597, 600 (1931). *See also, Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Since the *State* has the burden of proof, *Meraz* is wholly inapplicable and I dissent to any interpretation of *Meraz* that implies that courts of appeals have final factual say on matters beyond those which the defendant must prove.

Second, the majority cites *Meeks v. State*, 692 S.W.2d 504 (Tex.Cr.App.1985), for the proposition that "voluntariness of consent is a fact question." While that statement was made in *Meeks*, it was made in a different context. In *Meeks* we adopted the "totality of the circumstances" voluntariness test rather than the "fruits of the poisonous tree" doctrine in consent to search cases. *See Juarez*, 758 S.W.2d at 776. In *that context* we held: "The question of whether a consent to search was "voluntary" is a question of fact to be determined from the totality of all the circumstances." *Meeks*, 692 S.W.2d at 510.

Consent to search cases necessarily involve a question of fact and a question of law. *Stephenson v. State*, 494 S.W.2d 900, 904 (Tex.Cr.App.1973) (citing *Hoover v. Beto*, 439 F.2d 913 [5th Cir.1971]). To hold otherwise would effectively insulate consent issues from appellate review. However, the fact questions should be resolved by the trial court and "we will accept the trial court's finding unless it is clearly erroneous." *Juarez*, 758 S.W.2d at 779. To hold as the majority does today, is tantamount to saying we had no authority to address the consent to search issues in *Meeks, Reyes, Juarez* or *Miller*, because the courts of appeals had previously resolved the fact questions therein. The majority cannot seriously argue such an interpretation of *Meeks*.

### IV. CONCLUSION

The majority proclaims "[o]ur principal role as a court of last resort is the caretaker of Texas law, not the arbiter of individual applications." While the majority "would not be at all surprised to find that appellant's consent was actually involuntary in this case" the majority refuses to address the merits of appellant's ground for review. This position may be appropriate, even commendable, in some circumstances; however, the position is elitist in this case because the Court of Appeals has wholly failed to provide appellant with a correct attenuation analysis under *Brown*. Moreover, by misinterpreting the "factual conclusivity clause" of Art. V, § 6 and *Meeks*, the majority fails to discharge its duty as *caretaker* of Texas law and, at the same time, surrenders, to the courts of appeals, a large portion of our jurisdiction.

Even though the Court of Appeals failed to conduct a correct attenuation analysis, the majority describes the assessment of this case as *"exemplary."* Op. pg. 361. While heaping such praise on the Court of Appeals, the majority sub silentio overrules those cases where we specifically adopted the *Brown* factors for a taint attenuation analysis. *See, Reyes, Juarez,* and *Miller.* The majority describes the Court of Appeals' opinion as "[a] *thorough review* of federal and state decisional law." Op. pg. 361. However, that "thorough review" failed to mention *Brown,* other than in a "string cite," nor did the Court of Appeals mention *Reyes* or *Juarez.* The primary duty of this Court is to supervise the intermediate appellate courts. In my view, the majority abdicates its supervisory duty by placing its stamp of approval on an opinion that fails to follow the explicit holdings of this Court. How can the majority place its stamp of approval on an analysis which fails to follow our precedent? Such action is *not* "caretaking" and most certainly does *not* "promote the fair administration of justice."

Finally, we must ask ourselves what purpose will be served by this opinion. After today, criminal defendants must *separately* brief and argue that the consent was involuntary and that the consent was tainted by the illegal detention. How does this new requirement promote the fair administration of justice? As previously noted, the State has not complained it was "blindsided" by appellant's attenuation argument. Rather the State addressed the merits of appellant's ground for review. So what does the majority accomplish today raising and resolving an issue neither briefed nor argued by the parties? What is to be gained by erecting yet another artificial procedural hurdle? The only thing gained is the ability to avoid our responsibility to address the merits of appellant's ground for review.

For the foregoing reasons I respectfully dissent.

MALONEY, J., joins this opinion.

MILLER, J., joins this opinion with the following note: I note that attenuation was not mentioned, topside or bottom, in the appellant's brief on direct appeal. Nonetheless, the court of appeals addressed attenuation, and we agreed, by granting this PDR, to review their opinion. Therefore, I join part I of Judge BAIRD's opinion.

OVERSTREET, Judge, dissenting.

As the majority very well-details, we granted appellant's petition on a single ground which complained about the propriety of his arrest without a warrant and the admissibility of fruits of a search resulting therefrom. As the majority also well-details, there is a great deal of overlap between the consideration of whether taint has attenuated from fruits seized after a purportedly improper arrest and whether a consent to search given after such an arrest is voluntary. I do not believe the majority adequately addressed the merits of the ground for review. Therefore, I must dissent to such treatment.

Though I might agree with the effect of the majority's disposition of appellant's ground for review, I disagree with the methodology by which it arrives at that disposition. In particular, I strongly disagree with the majority's pronouncement of this Court's "principal role[,]" and description of "the job of this Court[.]" At 360. Based upon the sentiments expressed in the majority opinion, concisely described as a desire to "leave business of basic appellate review to the intermediate courts[,]" it would appear to me that the author and those who join him want to abdicate the responsibility of being the ultimate interpreters of criminal law in Texas. At 360, n. 2.

I do not see in what manner this Court's blind acceptance of courts of appeals' decisions "promote[s] the fair administration of justice by trial and appellate courts throughout Texas." As this Court is, as the majority points out, the "court of last resort" and "the caretaker of Texas law" (at least with respect to criminal jurisprudence, in which individuals face the loss of life and liberty) I think that it has an obli-

gation to do more than blindly follow lower courts. I should think that accuracy and precision rather than conscientiousness and good-faith should be the primary objective of the appellate portion of the criminal justice system. Rotely deferring to lower court's decisions does not facilitate accuracy and precision in the criminal justice system, particularly on those no doubt rare occasions when those decisions are not accurate or precise. Though the various courts of appeals may appreciate this Court "leav[ing the] business of basic appellate review to the intermediate courts[,]" considering the volume of petitions for discretionary review that we receive from attorneys representing both the State and convicted defendants, I doubt that such practitioners will be quite as appreciative. Nevertheless, I hope that this new policy does not engender an attitude in courts of appeals of having unfettered discretion in deciding criminal law issues.

I note that recently we have faced a situation in which a court of appeals chose to disregard a remand order from this Court. In *Pennock v. State,* No. B14–89–00099–CR, 1991 WL 230186 (Tex.App.—Houston [14th Dist.], delivered November 7, 1991, pet. pending) (Opinion on Remand), a court of appeals opined that "[w]hile [it], as an intermediate court, [was] obligated to follow the decisions of the court of criminal appeals, [it] d[id] not believe [that it was] obligated to follow an *obviously* erroneous decision." [Emphasis in original.] It then proceeded to fail to reconsider a point of error which we had instructed it to so do, apparently based upon its belief that it was not obligated to follow such a supposedly erroneous decision of this Court. Nevertheless, I suggest that the majority's new policy will encourage (or at least not discourage) other courts of appeals to likewise conclude that they are not bound by this Court's directives in light of this Court's expressed desire to "leave [to them the] business of basic appellate review[.]"

Though the court of appeals' decision in the instant cause may very well be a proper application of the facts and law, I believe that it is this Court's function and duty to decide whether such is the case rather than merely assuming that such is so because the court of appeals has conducted a "thorough" and "more than adequate" analysis. Judicial restraint is one thing, but "leav[ing the] business of basic appellate review to the intermediate courts" is another all together. Interestingly, making such a broad-sweeping policy pronouncement when *neither the State nor appellant asked this Court to do so* does not appear to be particularly judicially restrained.

It would appear to me that the majority is expressing a desire to abdicate its position as the ultimate interpreter of criminal law in Texas and to pass that responsibility on to the fourteen courts of appeals. I believe that criminal jurisprudence in this State would benefit if that power remained in this Court where the Texas Constitution places it. *See* TEX. CONST. art. V, § 5. Because the majority sees fit to so surrender this Court's authority, I vociferously dissent.