# PD-1142-15

NO

## IN THE

## COURT OF CRIMINAL

## APPEALS

## OF TEXAS

CHRISTOPHER MICHAEL DUNLOP,
Petitioner
V.
THE STATE OF TEXAS,
Respondent

Petition in Cause No. 296-82462-2012

From the 296th District Court of Collin

County, Texas

And

Petition in Cause No. 05-14-00441-CR

The Court of Appeals for the

Fifth District of

Dallas, Texas

## PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

November 2, 2015

ABEL ACOSTA, CLERK

Christopher M. Dunlop
435 Merrimac court
Roselle, IL 60172
214-628-1729
Dunlop4041@GMail.Com

ProSe PETITIONER

ORAL ARGUMENTS REQUESTED

1

# Identity of Parties and Counsel

_____

Christopher M. Dunlop – Appellant          The State of Texas – Appellee

**Appellant Counsel ProSe**          **Appellate Counsel**

Christopher M. Dunlop          John Rolater

435 Merrimac Ct.          Collin County District
Roselle, IL 60172          Attorney's Office

          2100 Bloomdale Road, Ste 100
          McKinney, TX 75071

**Trial Counsel**

Wes Wynne

Collin County District
Attorney's Office

2100 Bloomdale Road, Ste
100 McKinney, TX 75071

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES…………………………………..…………………………….ii

STATEMENT REGARDING ORAL ARGUMENT ................................................................ 5

STATEMENT OF THE CASE ..................................................................................... 5

STATEMENT OF PROCEDURAL HISTORY ..................................................................... 6

REASONS FOR REVIEW.......................................................................................... 3

STATEMENT OF FACTS............................................................................................7

GROUND FOR REVIEW ONE .................................................................................... 11

> The appeals court erred in finding that the evidence was legally sufficient to sustain a conviction where there was no physical evidence that anyone was injured but the defendant himself. The suspicion of guilt was due to the defendant inflicting harm upon himself, but the complaining witness testified that she had drugged him. The appeals court erred because they only took into account the police offices testimony that both the complaining witness and the 911 callers written statements were consistent and therefore factual when the appeals court did not compare the original 911 call with the 911 callers written statement which is completely different. If they would have done that and considered all of the evidence they would have seen that the complaining witnesses testimony of how they were left alone for over an hour before they were even spoken to by the Plano police department then they would have known that the complaining witnesses falsified the police report as she stated on the stand.

GROUND FOR REVIEW TWO ..................................................................................... 11

> The trial appeals court erred in not taking into account all of the evidence as stated in GROUND FOR REVIEW ONE and noting that the defendant wordlessly cut his own throat in front of the Plano officers because he had been involuntarily drugged and not in his right mind as the complaining witness testified to drugging him during the trial.

PRAYER FOR RELIEF..........................................................................................14

NO

---

IN THE

COURT OF CRIMINAL

APPEALS

OF TEXAS

---

CHRISTOPHER MICHAEL DUNLOP,
Petitioner
V.
THE STATE OF TEXAS,
Respondent

---

Petition in Cause No. 296-82462-2012

From the 296th District Court of Collin

County, Texas

and

The Court of Appeals for the

Fifth District of

D a l l a s ,  Texas

---

The Court of Appeals for the
Fifth District of Texas

---

**PETITION FOR DISCRETIONARY REVIEW**

---

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS TEXAS:

Christopher M Dunlop petitions the Court to review the judgment affirming his

conviction for the Class A offence of Assault Causing Bodily Injury to a Family

Member.

4

## STATEMENT REGARDING **ORAL** ARGUMENT

In the event this petition is granted, the Petitioner requests oral argument. Argument would assist the Court because resolution of the grounds for review depends upon a detailed exploration of the facts of the cases. Further, oral argument would provide this Court with an opportunity to question the parties regarding their positions.

## STATEMENT OF THE CASE

Appellant, Christopher M. Dunlop, was charged by indictment with the felony offense of assault family violence by impeding the normal breathing or circulation of blood of Laura Free by applying pressure to Laura Free's throat or neck. [1] After a jury trial, Mr. Dunlop was acquitted of the 3rd degree felony offense of Assault by Impeding, but was convicted of the lesser-included Class A offense of Assault Causing Bodily Injury to a Family Member. [2] Mr, Dunlop was sentenced to 1 year incarceration in the county jail, but the sentence was suspended and Mr. Dunlop was placed on community supervision for 2years. [3] This is a direct appeal from that conviction and sentence.

---

[1] (Clerk's Rat 11)
[2] (Clerk's Rat 77)
[3] (Clerk's Rat 78-80)

## PROCEDURAL HISTORY

The judgment of Petitioner's conviction was entered on March 18, 20I4. Petitioner's notice of appeal was timely filed on April 10, 20I4, the Fifth District Court of Appeals its affirmation of conviction on July 31, 2015. Motion for rehearing was not filed in time due to appellant not being notified until 2 weeks after the verdict and was unware of his rights that he could have still requested a hearing ProSe 15 days after his counsels notification of the verdict.

## REASONS FOR REVIEW

The Fifth Court of Appeals affirmed the conviction in this case despite the lack of any physical evidence of wrongdoing and not considering the actual testimony of the complaining witness herself stating the charges were falsified because the complaining witness thought she and her daughter had killed the defendant by drugging him.

The Fifth Court of Appeals did not discharge its duty of review to conscientiously and impartially apply the law of *Jackson v. Virginia,* 443 U.S.319 (1979) *and Brooki v. State,* 323 S.W.3d 893 (Tex. Crim. App. 20!0), to a fair consideration of all the evidence. *See Arcila v. State,* 834 S.W.2d 357, 360-61 (Tex. Crim. App. 1992).

## STATEMENT OF FACTS

In the early morning hours of July 11, 2012, Officers David Thornsby and Kevin Gendron of the Plano Police Department responded to a domestic disturbance call from a residence located at 3829 Carrizo Drive in Plano, Texas. [4] Upon arrival at the location, officers made contact with the 911 caller, Kirstin Reigelsperger, who

---

[4] (Rep.'s R. vol 3 at 128: 13-15); (Rep.'s R. vol 3 at 131: 6-10)

allowed them entry into the home. [5] As soon as the officers entered the residence, they observed the suspect, Christopher M. Dunlop, wordlessly pick up a large kitchen knife, place the knife to his own throat, and make a deep incision in his neck. [6] Mr. Dunlop then went into a bedroom and shut and locked the bedroom [7] door. Officer Thomsby immediately ordered both of the females (Laura Free, the complaining witness, and Kirsten Reigelsperger, the 911 caller) to exit the house and go across the street to a neighbor's yard. [8] Eventually, the officers gained entry into the bedroom and medical treatment was started by Emergency Medical Technicians on Mr. Dunlop. [9] During the estimated 30 minutes to an hour that Officers Thonsby and Gendron were attempting to gain entry into the bedroom and tend to Mr. Dunlop's injury, no contact was made with either Laura Free or Kirsten Reigelsperger by anyone from law enforcement. [10] In fact. Officer Gendron had no contact or interaction whatsoever with the complaining witness, Laura Free. [11] Once Mr. Dunlop had been stabilized and loaded onto a gurney for transport to the hospital, Officer Thomsby resumed contact with Laura Free and Kirsten

_____

[5] (Rep.'s R. vol 3 at 136: 15-19); (Rep.'s R. vol 3 at 177: 23-178: 4)

[6] (Rep.'s R. vol 3 at 139: 2-10); (Rep.'s R. vol 3at 181: 21-23)

[7] (Rep.'s R. vol 3 at 139: 22-25)

[8] (Rep.'s R. vol 3 at 142: 3-4); (Rep.'s R. vol 3 at 169: 10-19); (Rep's R. vol 3at 186: 4-18)

[9] (Rep.'s R. vol 3 at 143: 19-144: 4)

[10] (Rep.'s R. vol 3 at 157: 5-15); (Rep.'s R. vol 3 at 181:6-14) "

[11] (Rep.'s R. vol 3 at 186: 1-9)

Reigelsperger. [12] Officer Thomsby testified that Laura Free claimed that Mr. Dunlop had pulled her hair to the point that a chunk of her hair had come out of the backside of her scalp, and that she had been choked. [13] Officer Thomsby also stated that Laura Free had complained of pain in her head and neck area. [14] In his observations of Laura Free, Officer Thomsby stated that he observed no bruising or redness or scratches on her person the night of the incident. [15] As part of his investigation, Officer Thornsby also had Ms. Free fill out a Voluntary Witness Statement (State's Exhibit 57) [16], an Assault Supplement Packet (State's Exhibit 57) [17], and a page detailing "background information" contained within the Assault Supplement Packet (State's Exhibit 59) [18].

When Laura Free appeared before the court, she stated her intention to assert her Fifth Amendment privilege. [19] The state's prosecutor, Wes Wynne, offered Ms. Free testimonial (use) immunity. [20] Judge John Roach, Jr. appointed counsel to advise Ms. Free in regard to her 5th Amendment rights and the Grant of Use

_____

[12] (Rep.'s R. vol 3 at 144: 14-22)

[13] (Rep.'sR.vol3 at l62: 2-8)

[14] (Rep.'s R. vol 3 at 145: 18-22)

[15] (Rep.'s R. vol 3 at 156: 1-4)

[16] (Rep.'s R, vol 3 at 146: 10-19)

[17] (Rep.'s R. vol 3 at 142: 21-25)

[18] (Rep.'s R. vol 3 at 148: 25-149:10)

[19] (Rep.'s R. vol 3 at 201: 13-16)

[20] (Rep.'s R. vol 3 at 203: 24-204: 19);(Clerk's R. at 65-66)

Immunity offered to her by the prosecution. [21] Ultimately, Ms. Free accepted the Grant of Use Immunity and opted to testify. [22] Prior to the trial, Ms. Free had also filled out an Affidavit of Non-Prosecution, and she flatly stated that she did not want to see Mr. Dunlop prosecuted for this offense as he did nothing wrong and she was afraid for having drugged him. [23]

Ms. Free's trial testimony was contradictory to the and verbal statements she had provided to the police on July 11, 2012. In regard to written hair-pulling, Ms. Free testified that the hair-pulling in question was done in a playful, sexual manner and denied that it caused any pain, or if it caused pain, she stated it was the type of pain she had encouraged and wanted. [24] When pressed about the "chunk ofhair"that had reportedly been ripped out, she stated that only 4-5 strands of hair may have been pulled out, but that they also may have just fallen out on their own. [25] Ms. Free admitted that she had drugged Mr. Dunlop that night, without his knowledge, by pouring Hydrocodone cough syrup initially into a Four Loko, then later into a pot of coffee Mr. Dunlop was drinking. [26] She stated that she and her daughter, Kristen, decided to pour the rest of the bottle of hydrocodone cough syrup into Mr.

---

[21](Rep.'s R. vol 3 at 205: 8-14); (Rep/s R. vol 3 at 206: 1-15)

[22] (Rep.'s R. vol 3 at 228: 13-23); (Clerk's R. at 67)

[23](Rep.'s R. vol 4 at 21: 9-14)

[24] (Rep.'s R. vol 4 at 32: 17-33:9); (Rep.'s R. vol 4 at 84: 3-20)

[25] (Rep.'s R. vol 4 at 33: 10-24) (Rep.'s R. vol 4 at 34: 23-35: 24)

Dunlop's coffee because the first attempt at drugging him had no effect. [27] Ms. Free claimed to have fabricated the story about Mr. Dunlop assaulting her because she believed Mr. Dunlop had actually died from his injuries, [28] and because she was worried that she would now be forced to pay all the bills at the residence. [29] Ms. Free testified that not only had she fabricated the details of her written Voluntary Witness Statement, she had also lied about her description of the night's events when she was verbally questioned by the police on July 11, 2012. [30]

In regard to the allegation of hair pulling, in her written statement Ms. Free wrote that Mr. Dunlop "grabbed me by the back of the hair and yanked my head backward ripping out a fistful of my hair. [31] During her trial testimony, however, she denied that Mr. Dunlop ripped out a fistful of her hair,but she confirmed that Mr. Dunlop had yanked her hair and yanked her head backwards,and that she felt pain when he ripped her hair out. [33] In regard to the allegation of assault by strangulation, in her voluntary statement Ms. Free wrote, "he put his hands around my neck and squeezed; but I could still breathe, it was just a bit harder." [34] In her trial testimony, Ms. Free initially stated that Mr. Dunlop never put his hands on her

_____

[27](Rep.'s R. vol 4at37: 25-39: 24)

[28](Rep.'s R. vol 4 at 49: 18-24)

[29](Rep.'s R. vol 4 at 50: 3-22)

[30] (Rep.'s R. vol 4 at 51: 4-52: 14)

[31]State's Exhibit 58, Voluntary Witness Statement, page 3)

[32](Rep.'s R. vol 4 at 64: 16-25)

[33](Rep.'s R. vol 4 at 72: 17-18); (Rep.'s R. vol 4 at 73: 3-5)

[34](State's Exhibit 58, Voluntary Witness Statement,page 3)

neck. [35] Later, she clarified that Mr. Dunlop had put his hands on her clavicle area, trying to calm her down, but all she felt was the "heat from hands near my neck, but I could not state with certainty there was a hand on my neck." [36] When specifically asked whether her breathing was impeded, Ms. Free again stated that Mr. Dunlop did not have his hands around her neck. [37] "They were near my neck, and he never squeezed and impeded my air flow." [38] When the prosecutor questioned Ms. Free about the Assault Supplement Report she had filled out on the night of the incident, [39] Ms. Free again denied that Mr. Dunlop put his hands around her neck, and she further denied any pain associated with her neck or neck area." [40] On cross-examination, Ms. Free stated that she had lied to the police about the assault allegations concerning Mr. Dunlop because she and her daughter had drugged Mr. Dunlop, because they believed he was deceased or about to die, and because she feared she would be stuck in a lease she could not afford on her own." [41] She also stated that she had lied in the Victim's Assistance portion of the Assault Supplement Packet in order to qualify for victim's assistance money, and to

_____

[35] (Rep.'s R. vol 4 at 65: 3-4)

[36] (Rep.'s R. vol 4 at 66: 1-10)

[37] (Rep.'s R. vol 4at66; 25-67: 7)

[38] (Rep.'s R. vol 4 at 66: 18-20)

[39] (State's Exhibit 59,Assault SupplementReport)

[40] (Rep.'s R. vol 4 at 72: 17-73:24); (Rep.'s R. vol 4 at 86: 14-24

[41] (Rep.'s R. vol 4 at 79: 24-81:20); (Rep.'s R. vol 4 at 94: 19-95:5).

[42] (State's Exhibit 59, Assault Supplement Report)

allow her to terminate the lease." [43] Ms. Free stated that she concocted her fabricated story during the time period of "at least an hour" when she and Kirsten Reigelsperger were left unattended by the police." [44]

Ms. Free was shown all the photographs of her neck and body that were taken by the police the night of the incident." [45] Ms. Free confirmed that there was no discoloration or bruising depicted in any of the photographs." [46] Ms. Free stated that she lied about Mr. Dunlop assaulting her because of the "fear factor" of getting into trouble herself due to having drugged him." [47] She also stated that when she gets angry or upset, she tends to embellish and lie about the facts." [48]

Christopher Dunlop elected not to testify during the case in chief." [49] After closing arguments and deliberation the jury returned a verdict of Guilty on the lesser-included offense of misdemeanor assault. [50] However, the Charge of the Court submitted to the jury required a finding as to the manner and means of the misdemeanor assault, specifically, "by applying pressure to Laura Free's throat and

───────────────────────

[43](Rep.'s R. vol 4 at 81: 12-82: 10)

[44](Rep.'sR.vol4at82: 11-23)

[45] (State's Exhibits 2-4, 6-8,12 and 13)

[46](Rep.'s R. vol 4 at 89: 19-92: 18)

[47](Rep.'s R. vol 4 at 87: 1-5)

[48](Rep.'s R. vol 4 at 108:11-14)

[49](Rep.'s R. vol 4 at 97: 13-21)

[50](Rep.'s R. vol 4 at 147: 15-19)

neck." [51] Punishment was assessed by the court at 1 year in county jail probated for 2 years; completion of a batterer's intervention prevention program; completion of a psychological exam; no consumption of alcohol: no contact with Laura Free or her children; 100 hours of community service; and 30 days term and condition time with authorization for off-work hours. The court also made an affirmative finding of family violence. [52]

GROUND FOR REVIEW NO. 1.RESTATED

THE APPELLATE COURT ERRED IN FINDING THAT THE EVIDENCE IS LEGALLY SUFFICIENT TO JUSTIFY A FINDING OF GUILTY OF THE OFFENSE OF ASSAULT FAMILY VIOLENCE.

GROUND FOR REVIEW NO. 2. RESTATED

COMPLAINING WITNESS TESTIFIED OF FALSIFYING POLICE REPORT BECAUSE HER AND HER DAUGHTER DRUGGED THE DEFENDANT AND THOUGHT THEY KILLED HIM.

---

[51] (Clerk''s R.at 74)

[52] (Rep.'s R. vol 4 at 158: 5-17)

## PRAYER FOR RELIEF

For the reasons stated, the Petitioner was denied a fair trial in Cause No. 296-82462-2012. Therefore, Appellant prays that this Court grant his petition for discretionary review and upon reviewing the judgment entered below, reverse this Cause and dismiss the prosecution

or remand it for a new trial.

Very Respectfully submitted,

Chris Dunlop
435 Merrimac ct
Roselle, IL 60172
ProSe

14

Print this page

# Case # 05-14-00441-cr

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 10/30/2015 12:57:18 AM |
| Case Number | 05-14-00441-cr |
| Case Description | |
| Assigned to Judge | |
| Attorney | |
| Firm Name | Individual |
| Filed By | Christopher Dunlop |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | Visa |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | 12423208 |
| Order # | 007609784-0 |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFile |
| Filing Code | Petition for Discretionary Review |
| Filing Description | |
| Reference Number | |
| Comments | |
| Status | Rejected |

## Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

## Rejection Information

| Rejection Reason | Time | Rejection Comment |
|---|---|---|
| | 11/02/2015 | The petition for discretionary review does not contain a certification of compliance with T.R.A.P. 9.4(i)(3). The petition for discretionary review does not contain the |

| | | |
|---|---|---|
| Other | 12:20:57 PM | identity of Judge, Parties and Counsel in compliance with[Rule 68.4(a)]; it does not contain the identity of the trial court judge. The petition for discretionary review does not contain a copy of the court of appeals opinion [Rule 68.4(j)]. You have ten days to tender a corrected petition for discretionary review. |

## Documents

| | | |
|---|---|---|
| *Lead Document* | Petition_for_Drescretionary_Review-10-30-15.pdf | [Original] |