PD-1643-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/14/2015 9:34:01 AM
Accepted 1/20/2015 5:45:15 PM
ABEL ACOSTA
CLERK

# NO. PD-1643-14

## IN THE
## COURT OF CRIMINAL APPEALS OF TEXAS

---

# DAYMOND LAMONT STEWART
**Appellant**
**v.**
# STATE OF TEXAS
**Appellee**

---

# APPELLANT'S PETITION
# FOR DISCRETIONARY REVIEW

---

Appeal from the 82nd Judicial District Court of Falls 9225
and Cause Number 10-13-00414-CR in the Tenth Court of Appeals of Texas

**LAW OFFICE OF STAN SCHWIEGER**
600 Austin Avenue, Suite 12
P.O. Box 975
Waco, Texas   76703-0975
(254) 752-5678
(254) 752-7792—Facsimile
E-mail: wacocrimatty@yahoo.com
State Bar No. 17880500

**ORAL ARGUMENT NOT REQUESTED**

## NAMES OF THE PARTIES TO THE FINAL JUDGMENT

**STATE OF TEXAS:**

Ms. Kathryn J. Gilliam
Falls County District Attorney
125 Bridge Street, Suite 309
Marlin, Texas   76661

**APPELLANT'S TRIAL COUNSEL**

Mr. Hoagie Karels
129 Post Office Street
Marlin, TX 76661

**TRIAL JUDGE**

The Honorable Robert Stem
82nd District Court
Falls County Courthouse
Marlin, Texas   76691

# TABLE OF CONTENTS

NAMES OF ALL PARTIES TO THE FINAL JUDGMENT.. . . . . . . . . . . . . . . . i

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF THE CASE/STATEMENT OF PROCEDURAL HISTORY. . v

GROUND FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      The Waco court of appeals failed to fully comply with the rules concerning memorandum opinions by failing to the "basic reasons" concerning Appellant's claim.

    A.    Reason for Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    What'd I Say?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    C.    Remand is necessary to allow the Waco court to answer Appellant's claim.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    D.    Review is necessary.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P. 9.4

APPENDIX:      *Stewart v. State*, Nos. 10-13-00414-CR, 10-13-00415-CR, 2014 WL 6091954 (Tex. App.—Waco Nov. 13, 2014, no pet. h.) (mem. op., not designated for publication).

# INDEX OF AUTHORITIES

## FEDERAL CASES

*Wei Guang Wang v. BIA*,
     437 F.3d 270  (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Valle*,
     527 F. App'x 158 (3d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## STATE CASES

*Arcila v. State*,
     834 S.W.2d 357 (Tex. Crim. App. 1992), *overruled on other grounds by Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997). . . . . . . . . . . . . . . 6

*Gonzalez v. McAllen Med. Ctr., Inc.*,
     195 S.W.3d 680 (Tex. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hammer v. State*,
     296 S.W.3d 555 (Tex. Crim. App. 2009). . . . . . . . . . . . . . . . . . . . . . . .  5

*Farrell v. State*,
     864 S.W.2d 501 (Tex. Crim. App. 1993) (en banc). . . . . . . . . . . . . . . . . 6

*Sims v. State*,
     99 S.W.3d 600 (Tex. Crim. App. 2003). . . . . . . . . . . . . . . . . . . . . . . . . 3

*Stewart v. State*,
     Nos. 10-13-00414-CR, 10-13-00415-CR, 2014 WL 6091954 (Tex. App.—Waco Nov. 13, 2014, no pet. h.). . . . . . . . . . . . . . . . . . . . . . . . . v, 1, 4

*Thompson v. State*,
     987 S.W.2d 64  (Tex. Crim. App. 1999) (en banc). . . . . . . . . . . . . . . . . . 5

## STATE STATUTES

Tex. Penal Code Ann. § 22.021  (West 2012). . . . . . . . . . . . . . . . . . . . . . . . . .  iv

# STATE RULES

Tex. R. Evid. 101(c).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Tex. R. App. P. 47.1.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Tex. R. App. P. 47.4.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Tex. R. App. P. 66(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

# MISCELLANEOUS

Chad M. Oldfather,
*Remedying Judicial Inactivism: Opinions As Informational Regulation*, 58 Fla. L. Rev. 743. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Daymond Lamont Stewart respectfully requests that this appeal not be presented on oral argument. The issues can be addressed by briefs adequately because the error committed is open and obvious.

## STATEMENT OF THE CASE
## STATEMENT OF PROCEDURAL HISTORY

Mr. Stewart was indicted for the offense of Aggravated Sexual Assault.[1] Trial began on November 5, 2013 in the 82nd Judicial District Court of Falls County, Texas. The Honorable Judge Robert Stem presided over the trial. Appellant was found guilty of that offense on November 12, 2013.[2] The jury assessed punishment, finding the enhancement allegation true. Sentence was assessed at life in the Texas Department of Criminal Justice, Institutional Division.[3] The sentence was pronounced in open court on November 12, 2013.[4] Certification of defendant's right of appeal was filed on that same date, showing that Appellant had "the right to appeal."[5] Notice of

---

[1]    TEX. PENAL CODE ANN. § 22.021 (West 2012); (I C.R. at 3).

[2]    (II C.R. at 103).

[3]    (II C.R. at 104).

[4]    (6 R.R. at 75).

[5]    (II C.R. at 102).

appeal was filed November 15, 2013.[6]  In a memorandum opinion, Appellant's issues

were overruled by the Waco Court of Appeals, affirming the judgment.[7]  This Court

approved an extension to file the application for Petition for Discretionary Review on

December 17, 2014.

---

[6]    (II C.R. at 106).

[7]    *Stewart v. State*, Nos. 10-13-00414-CR, 10-13-00415-CR, 2014 WL 6091954, at *3
(Tex.  App.—Waco Nov. 13, 2014, no pet. h.) (mem. op., not designated for publication).

**GROUND FOR REVIEW:**

> The Waco court of appeals failed to fully comply with the rules concerning memorandum opinions by failing to the "basic reasons" concerning Appellant's claim.

> Texas courts have held that "the State is not required to present an expert on probability and statistics in order to show that DNA testing is reliable. Neither *Kelly* nor Rule 702 requires such a showing as a prerequisite to admission." Accordingly, we cannot conclude that Stewart's constitutional rights were violated. We overrule Stewart's sole issue in both appellate cause numbers.[8]

Mr. Stewart's claims below dealt with confrontation – not a violation of the Rules of Evidence. As such, this matter should be remanded to the Court of Appeals, as their opinion clearly is violation of the Rules of Appellate Procedure.[9]

### A. Reason for review.

The Court of Appeals opinion appears to have so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of this Court's supervision.[10] Specifically, that court failed to issue a memorandum opinion within the confines of the Rules of Appellate Procedure.

---

[8]      *Stewart*, 2014 WL 6091954, at *3 (internal citations omitted).

[9]      *See* TEX. R. APP. P. 47.1. (stating that "[t]he court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

[10]      TEX. R. APP. P. 66(f).

### B.  *What'd I Say?*[11]

Mr. Stewart requests review of this Court for an order remanding this matter to the Court of Appeals.  The remand should order the Waco court of appeals to answer the question posed in his brief before the Tenth Court of Appeals: did the trial court deny Mr. Stewart's "constitutional right of confrontation by allowing evidence of a statistical 'match' concerning DNA evidence[?]"[12]

A memorandum opinion is intended to be brief in scope and "no longer than necessary to advise the parties of the court's decision and the basic reasons for it."[13] A memorandum opinion generally should focus on the basic reasons why the law applied to the facts leads to the court's decision.[14]  Persons affected by the decision are entitled to a written opinion stating why the jury's verdict can or cannot be set aside.[15]  Commentators have provided the following reasons why appellate courts should issue opinions that provide the parties with a basis for a court's decision: (1) opinions provide an "informational regulation" that places a check on judicial behavior; (2) opinions provide a mechanism by which parties are better positioned to

---

[11]  Used with great respect to the late Ray Charles.

[12]  Appellant's Br. at p. vii.

[13]  TEX. R. APP. P. 47.4.

[14]  *Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681 (Tex. 2006).

[15]  *Id.* at 682.

act in response; (3) opinions require a court to justify its decision in a more systematic, logical way; (4) opinions assure parties that their participation in the justice system was meaningful; and (5) opinions provide a party with a more meaningful opportunity for further review by a higher court.[16] In fact, this Court has found that reviewing courts should mention a party's argument and then "explain why it does not have the persuasive force that the party thinks it does."[17] "The party may be dissatisfied with the decision, but at least he will know the reason he was unsuccessful."[18] This is precisely what the Waco court did NOT do.

In full, Mr. Stewart questioned the "surrogate testimony" of the scientist who conducted the DNA testing, in that it failed to meet the constitutional requirement of cross examination. Mr. Stewart argued he possessed a constitutional right to be confronted with the analyst of the database. Having no prior right to cross-examine him, the trial court erred in allowing this testimony to be permitted to be considered by the jury.

The Waco court wholesale ignored the issue and arguments of Mr. Stewart. But the only mention by the Waco court of confrontation is found in a footnote, where the

---

[16] *See* Chad M. Oldfather, *Remedying Judicial Inactivism: Opinions As Informational Regulation*, 58 FLA. L. REV. 743, 743 (2006).

[17] *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

[18] *Id.*

Court of Appeals found that they were "not persuaded by Stewart's reliance on the United States Supreme Court's decision in *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011)."[19] It is not as though the Tenth Court did not understand that Appellant was making a challenge to the DNA evidence because of a lack of confrontation.[20] Nonetheless, the bulk of the opinion is spent on justifying admission of the DNA results, explaining that DNA has been found to be admissible under the Rules of Evidence.[21] Although accurate, this fails to answer the constitutional question of whether the Supreme Court's holdings concerning confrontation require production of a witness to demonstrate the statistical validity of this number. This is insufficient for review from this Court.[22]

Even more puzzling is the Waco court's apparent proclamation that the admissibility under the Texas Rules of Evidence somehow trumps the requirement of confrontation. Even the Rules of Evidence state that the Constitution of the United

---

[19]     *Stewart*, 2014 WL 6091954, at *4.

[20]     *Stewart*, 2014 WL 6091954, at *2.

[21]     *Stewart*, 2014 WL 6091954, at*2–*4.

[22]     *See, e.g., Wei Guang Wang v. BIA,* 437 F.3d 270, 275 (2d Cir. 2006) ( stating that the appellate court should be provided "with more than cursory, summary or conclusory statements, so that we are able to discern its reasons for declining to afford relief . . ."); *United States v. Valle*, 527 F. App'x 158, 159 (3d Cir. 2013) (holding that a reviewing court must be provided, at a minimum, with an explanation sufficient to see that the particular circumstances of the case have been given meaningful consideration); ROBERT A. LEFLAR, INTERNAL OPERATING PROCEDURES OF APPELLATE COURTS 3 (1976) ("[T]he task to the appellate court is to determine if prejudicial errors were committed at the trial level and to correct them if they were.").

States and the Constitution of Texas have "governance" over the Rules of Evidence.[23]

"In those rare situations in which the applicable rule of evidence conflicts with a federal constitutional right, Rule 101(c) requires that the Constitution of the United States controls over the evidentiary rule."[24]  Thus, the court of appeals opinion is off point, and fails to answer Appellant's claim.

### C.    Remand is necessary to allow the Waco court to answer Appellant's claim.

As shown above, the only mention of the denial of confrontation is in the concluding sentence and footnote.  Similar circumstances have required remand.  For instance, the Texas Supreme Court held that when issued a judgment without stating their reasoning, that court found that "the plaintiffs that they are entitled to more than this . . ." and reversed.[25]  Moreover, where the lower court arrived "at its holding through a contradiction,"[26] Presiding Judge Keller, and Judge Meyers joined to dissent from a denial of petition of discretionary review.

---

[23]    TEX. R. EVID. 101(c) ("Hierarchical governance shall be in the following order: the Constitution of the United States, those federal statutes that control states under the supremacy clause, the Constitution of Texas, the Code of Criminal Procedure and the Penal Code, civil statutes, these rules, and the common law. Where possible, inconsistency is to be removed by reasonable construction.").

[24]    *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009).

[25]    *Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 680–81 (Tex. 2006).

[26]    *Thompson v. State*, 987 S.W.2d 64, 65, 713 (Tex. Crim. App. 1999) (en banc) (Keller, P.J., dissenting from the denial of the petition for discretionary review).

Mr. Stewart was entitled, by rule, to an opinion that squarely addressed his issue as to why he was not entitled to confrontation of the questioned witness. Instead, his opinion reflects a warmed over rehash of settled law of the "reliability" of DNA evidence. Mr. Stewart requests that this Court remand this matter to the court of appeals to address the issue of confrontation as applied to his case.

## D. Review is necessary.

This Court has no jurisdiction of the merits of Mr. Stewart's legal claim, as that opinion must come from the court of appeals.[27] As such, this Court should use its power of discretionary review "to promote the fair administration of justice by trial and appellate courts throughout Texas."[28] This is a case that demands that review to right the scales of justice.

## PRAYER FOR RELIEF

For the reasons alleged above, Mr. Stewart prays that this Honorable Court will grant his Petition, and order a brief on the merits of this case, or in the alternative, grant summary remand to the Waco court of appeals with instructions to directly answer Appellant's claim.

---

[27] *Farrell v. State*, 864 S.W.2d 501, 502 (Tex. Crim. App. 1993) (en banc) (holding that this Court's review is limited to decisions by the courts of appeals).

[28] *Arcila v. State*, 834 S.W.2d 357, 361 (Tex. Crim. App. 1992) (en banc), *overruled on other grounds by Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997) (en banc).

Respectfully submitted,

**LAW OFFICE OF STAN SCHWIEGER**

*/s/ Stan Schwieger*

Stan Schwieger
600 Austin Avenue, Suite 12
P.O. Box 975
Waco, Texas 76703-0975
(254) 752-5678
(254) 756-7792 — Facsimile
E-mail: wacocrimatty@yahoo.com
State Bar No. 17880500
**ATTORNEY FOR PETITIONER**

## CERTIFICATE OF SERVICE

A copy of this Petition for Discretionary Review has been delivered to the Falls County District Attorney's Office, Marlin, Texas, attorney of record for the State of Texas, by this Court's electronic filing system *and* to the State Prosecuting Attorney, P.O. Box 12405, Austin, Texas, 78711, by first class mail or by electronic mail.

Signed January 14, 2015.

*/s/ Stan Schwieger*

Stan Schwieger

**CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P. 9.4**
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.   This brief complies with the type-volume limitation of TEX. R. APP. P. 9.4(i) because this brief contains 1,958 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2.   This brief complies with the typeface requirements and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been produced on a computer in conventional typeface using WordPerfect X7 in Times New Roman 14 point font in the body of the brief and Times New Roman 12 point font in the footnotes.


*/s/ Stan Schwieger*

---
Stan Schwieger

2014 WL 6091954
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION AND SIGNING OF OPINIONS.

**MEMORANDUM OPINION**
**Do not publish**
Court of Appeals of Texas,
Waco.

Daymond Lamont STEWART, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 10–13–00414–CR, 10–13–00415–CR.  |  Nov. 13, 2014.

From the 82nd District Court Falls County, Texas, Trial Court Nos. 9225 and 9226.

**Attorneys and Law Firms**

Stan Schwieger, for Daymond Lamont Stewart.

Kathryn Gilliam, for The State of Texas.

Before Chief Justice GRAY, Justice DAVIS, and Justice SCOGGINS.

**MEMORANDUM OPINION**

AL SCOGGINS, Justice.

 **\*1**  In one issue in both appellate cause numbers, appellant, Daymond Lamont Stewart, challenges his convictions for burglary of a habitation and aggravated sexual assault. *See* TEX. PENAL CODE ANN. § 22.021 (West Supp.2014); *see also id.* § 30.02(c)(2) (West 2011). Specifically, Stewart argues that the trial court denied his constitutional right of confrontation by allowing evidence of a statistical "match" concerning DNA evidence. We affirm.

**I. BACKGROUND**

On the night in question, Lynne Richnow was working as a nurse at the Falls Community Hospital in Marlin, Texas. At around 12:30 a.m., Richnow received a telephone call from her daughter, Lacy Johnson, who was upset. According to Richnow, Johnson and Johnson's husband were having "an argument, a dispute." Richnow received permission to leave work to "take care of [her] kiddos."

Upon arriving at Johnson's house, Richnow played the role of "mediator, trying to calm everyone down." During the night, Richnow drank a beer with Johnson's husband, and Richnow and Johnson smoked a marihuana cigar. About an hour later, the dispute subsided, and Richnow left.

Richnow did not return to work because she had been drinking beer and smoking marihuana. After driving to the hospital to retrieve Richnow's wallet, Johnson drove Richnow home. During the drive, Richnow recalled seeing "a black male walking with a white wife beater," but she did not think anything of it at the time.

When she returned home, Richnow began hanging blinds while drinking a beer and smoking marihuana. Richnow recounted that, while sitting on her recliner, "a man appears with white covering his face and a red do-rag." The man told Richnow to give him all of her money, to which Richnow responded, "I ain't got no money, fool." The man then took Richnow's marihuana and hit her when she tried to get out of the recliner. Richnow recalled that the man continued to hit her and eventually pulled off her pants. Thereafter, the man forced open Richnow's legs and instructed her to play with herself. When she refused to comply, the man hit Richnow again. Eventually, Richnow complied, and while doing so, the man pulled out his penis, briefly masturbated, grabbed Richnow's wallet, and took off running.

Once the man left her house, Richnow called 911 and provided dispatch with a description of the man. Later, in a photographic lineup, Richnow identified Stewart as the perpetrator of the offenses to a 70% degree of certainty. Richnow testified that her identification of Stewart as the perpetrator was based on his "eyes, his glasses, the width of his—the bridge of his nose." At trial, Richnow stated that she was 100% sure that Stewart was the perpetrator.

Stewart was charged by indictment with the offenses of burglary of a habitation and aggravated sexual assault. Included in the indictments was an enhancement paragraph referencing Stewart's 1999 conviction for felony burglary of a habitation.

**\*2** At trial, Serena Zboril, a forensic scientist with the Texas Department of Public Safety Crime Laboratory in Waco, Texas, testified that she took DNA samples from Richnow's underwear, which yielded a mixture profile of at least three people. Zboril compared the profile from Richnow's underwear to a buccal swab that had been obtained from Stewart. Based on the comparison, Stewart could not be excluded as a contributor to the profile. Zboril also compared Stewart's DNA profile to a profile obtained from Richnow's wallet. The result of the test was a "single-source DNA profile, and that profile is consistent with the DNA profile of Daymond Stewart."

At the conclusion of the evidence, the jury found Stewart guilty of the charged offenses. Stewart admitted that the enhancement paragraphs contained in the indictments were true, and the jury sentenced Stewart to sixty years' incarceration in the Institutional Division of the Texas Department of Criminal Justice for the count of burglary of a habitation. Stewart received a life sentence for the count of aggravated sexual assault. The trial court ordered that the imposed sentences run concurrently. These appeals followed.

## II. STANDARD OF REVIEW

We review a trial court's decision to admit evidence for an abuse of discretion. *Martinez v. State,* 327 S.W.3d 727, 736 (Tex.Crim.App.2010). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State,* 268 S.W.3d 571, 579 (Tex.Crim.App.2008). A trial court does not abuse its discretion if any evidence supports its decision. *See Osbourn v. State,* 92 S.W.3d 531, 538 (Tex.Crim.App.2002). We will uphold the trial court's evidentiary ruling if it was correct on any theory of law applicable to the case. *See De La Paz v. State,* 279 S.W.3d 336, 344 (Tex.Crim.App.2009).

## III. ANALYSIS

In his sole issue, Stewart contends that the trial court abused its discretion by admitting evidence of a statistical "match" concerning DNA evidence. Specifically, Stewart complains about Zboril's testimony concerning DNA evidence because her testimony described population ratios that were created by forensic experts of a FBI laboratory who were not called to testify.

Stewart asserts that his rights under the Confrontation Clause were violated because he was unable to cross-examine the forensic experts of the FBI laboratory regarding the formulation of the population ratios.

Pursuant to Texas Rule of Evidence 702, before admitting expert testimony, the trial court must be satisfied that three conditions are met: (1) that the witness qualifies as an expert by reason of her knowledge, skill, experience, training, or education; (2) that the subject matter of the testimony is appropriate for expert testimony; and (3) that admitting the expert testimony will actually assist the factfinder in deciding the case. *Jessop v. State,* 368 S.W.3d 653, 671 (Tex.App.-Austin 2012, no pet.) (citing *Vela v. State,* 209 S.W.3d 128, 131 (Tex.Crim.App.2006); *Jackson v. State,* 17 S.W.3d 664, 670 (Tex.Crim.App.2000)); *see* TEX.R. EVID. 702. These conditions are usually referred to as (1) qualification, (2) reliability, and (3) relevance. *Vela,* 209 S.W.3d at 131. Reliability focuses on the subject matter of the witness's testimony; the proponent of the expert testimony must demonstrate by clear and convincing evidence that the expert testimony is reliable. *Russeau v. State,* 171 S.W.3d 871, 881 (Tex.Crim.App.2005).

**\*3** Stewart's complaints center on the reliability of the DNA evidence. To be considered sufficiently reliable, scientific evidence must meet the following criteria: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Vela,* 209 S.W.3d at 134; *see Kelly v. State,* 824 S.W.2d 568, 573 (Tex.Crim.App.1992). Factors that could affect the trial court's determination of reliability include, but are not limited to: (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such a community can be ascertained; (2) the qualifications of the expert testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) a potential rate of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of the person(s) who applied the technique on the occasion in question. *Kelly,* 824 S.W.2d at 573; *see Jessop,* 368 S.W.3d at 671.

The record in this case demonstrates that the State satisfied the three criteria to establish the reliability of the DNA evidence. *See Vela,* 209 S.W.3d at 134; *see also Kelly,* 824 S.W.2d at 573. DNA evidence has been held admissible in Texas. *Jessop,* 368 S.W.3d at 671 (citing *Jackson,* 17 S.W.3d at 672; *Campbell,* 910 S.W.2d 475, 478–79 (Tex.Crim.App.1995); *Hicks v. State,* 860 S.W.2d 419, 423–24 (Tex.Crim.App.1993), *overruled on other grounds by Rosales v. State,* 4 S.W.3d 228 (Tex.Crim.App.1999); *Kelly,* 824 S.W.2d at 573). At a hearing held outside the presence of the jury, Zboril testified regarding the extraction of the DNA. Defense counsel asked Zboril about how Popstats, the computer database used to analyze DNA samples, works and objected to Zboril's testimony regarding population ratios. In response to questioning by the trial court, Zboril noted: "And all of our instruments are validated and our procedures are validated." When asked who validates the instruments, Zboril stated: "Our department, as well as probably the manufacturers of the instrument. They make sure that before they release it to their customers that they—that it does work." Zboril also testified that she is trained in the use of this program and that this program is widely used in the industry. Zboril then described how she tested the DNA samples. [1] Because Zboril's testimony touched on the three criteria used to establish the reliability of DNA evidence, we cannot say that the trial court abused its discretion by allowing Zboril to testify about a statistical "match" concerning DNA evidence. [2] *See Martinez,* 327 S.W.3d at 736; *De La Paz,* 279 S.W.3d at 344; *Osbourn,* 92 S.W.3d at 538; *see also Vela,* 209 S.W.3d at 134; *Kelly,* 824 S.W.2d at 573.

**\*4** Nevertheless, at trial and on appeal, Stewart argues that the State should have called an expert witness to demonstrate the statistical validity of the numbers generated by Popstats. We disagree. Texas courts have held that "the State is not required to present an expert on probability and statistics in order to show that DNA testing is reliable. Neither *Kelly* nor Rule 702 requires such a showing as a prerequisite to admission." *Jessop,* 368 S.W.3d at 671–72 (citing *Roberson v. State,* 16 S .W.3d 156, 168 (Tex.App.-Austin 2000, pet. ref'd); *Griffith v. State,* 976 S.W.2d 241, 251 (Tex.App.-Amarillo 1998, pet. ref'd). Accordingly, we cannot conclude that Stewart's constitutional rights were violated. *See id.; see also Roberson,* 16 S.W.3d at 168; *Griffith,* 976 S.W.2d at 251. We overrule Stewart's sole issue in both appellate cause numbers.

## IV. CONCLUSION

We affirm the judgments of the trial court.

Footnotes

1       Later, in the presence of the jury, Zboril testified that: "There is a computer program that we use called Popstats, [which] is generated by the FBI. And I take the profiles that I have generated and put those numbers into the computer program and it will give me the random match probability."

2       We are not persuaded by Stewart's reliance on the United States Supreme Court's decision in *Bullcoming v. New Mexico,* 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011). In *Bullcoming,* the Court addressed the following question:

    We granted certiorari to address this question: Does the Confrontation Clause permit the prosecution to introduce a forensic laboratory report containing a testimonial certification, made in order to prove a fact at a criminal trial, *through the in-court testimony of an analyst who did not sign the certification or personally perform or observe the performance of the test reported in the certification.* Our answer is in line with controlling precedent: As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness.

    *Id.* at 2722 (emphasis added). Here, Zboril testified that she performed the DNA analysis in the forensic laboratory, and the record reflects that Zboril was subjected to cross-examination. Accordingly, we find the *Bullcoming* case to be factually distinguishable. *See id.*

---

**End of Document**                                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.