**Tarsha Delavette WOODS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–08–00259–CR.**

Court of Appeals of Texas,
Beaumont.

Submitted Dec. 29, 2009.

Decided Feb. 17, 2010.

Tom Brown, Livingston, for appellant.

William Lee Hon, Crim. Dist. Atty., Kaycee Jones, Asst. Crim. Dist. Atty., Livingston, for state.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

Tarsha Delavette Woods appeals her conviction by a jury for the offense of aggravated assault against a public servant. The jury also found that Woods used a motor vehicle as a deadly weapon in the commission of the offense. The jury assessed her punishment at seven years of confinement in the Texas Department of Criminal Justice, Institutional Division, and a fine of $5,000. The jury recommended that the confinement portion of the sentence be suspended. The trial court placed Woods on community supervi-

sion for seven years. In her sole issue, Woods complains about the exclusion of evidence of her mental health during the guilt innocence phase of the trial.

On December 2, 2002, Woods drove a motor vehicle on U.S. Highway 59 at speeds in excess of one hundred miles per hour. After clocking Woods driving 111 miles per hour in a sixty-five mile-per-hour zone, a Texas Highway Patrol trooper pursued Woods through Liberty County and San Jacinto County. Woods drove over spike strips as she entered Polk County but continued to drive approximately seventy-five miles per hour as the tires deflated. The complainant, Dana Piper, a Polk County deputy sheriff, pulled his patrol vehicle next to Woods's vehicle. Woods sideswiped the deputy's vehicle and continued driving on the highway. Piper used his vehicle to form a "rolling roadblock" with other law enforcement vehicles. Several patrol vehicles took positions ahead of Woods's vehicle and slowed down. During this maneuver, Woods struck Piper's vehicle several times, injuring him in the process. Wood's vehicle eventually stopped and the officers removed her from the vehicle. Woods struggled with the officers. She wore no clothing. The arresting officer testified that Woods asked if she could sing hymns and that she did sing hymns while being transported to the jail.

Woods did not claim that she was insane at the time of the offense and did not file a notice of insanity defense. During the defense's case-in-chief, Woods called the Polk County jail administrator, who testified that when Woods was booked into the jail, she was assigned to the violent cell and a notation was made that she was too violent to complete the book-in process. A justice of the peace testified that Woods appeared before him and he administered her rights under Article 15.17 of the Texas Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 15.17 (Vernon Supp. 2009).

Woods also called a psychiatric social worker from the Burke Center, who testified that records originally subpoenaed in 2003 had been destroyed in 2004. The woman who had been Woods's roommate at the time of the offense testified that Woods was very depressed the day before the incident occurred. The roommate testified that Woods "wasn't acting like herself." Woods talked to the television "like someone else was in there that she was talking to" and she was singing and talking to herself. The roommate stated that it was not the first time Woods had behaved in that manner. After an unsuccessful attempt to engage Woods in conversation, the roommate called Woods's mother and took possession of Woods's car keys. The roommate went to sleep, and when she awoke, Woods was gone. Woods did not leave a note. The roommate was also aware that Woods took medication.

Woods's mother testified that after talking to Woods on December 1, 2002, she became very concerned. Woods wanted to "come home" to Pine Bluff, Arkansas from Houston, Texas but her mother knew from talking to Woods that Woods "wasn't in [any] shape to drive home by herself." She tried to get Woods to connect her with the police department so they could "try to get her some help to get her to a hospital to get her some help." Three days after Woods's arrest the insurance company called to say that Woods had been in an accident.

Woods's father testified that on December 1, 2002, he and Woods's mother received a call that Woods was "acting kind of erratic or was having some problems" and that they became concerned. He expected Woods to "come home" and instructed his wife to relay the message to Woods. They did not hear from Woods

for several days until the insurance company called.

The trial court sustained a series of objections by the State to questions asked by defense counsel. Woods does not challenge the trial court's rulings on the State's objections to leading questions, to hearsay, to questions calling for speculation, or to the non-responsiveness of answers. Accordingly, we address only the evidence excluded pursuant to the State's relevance objections.

First, in accordance with a motion in limine, defense counsel took the Burke Center social worker on voir dire. The social worker stated that the sheriff's department called her on December 5, 2002, to evaluate Woods to see if Woods was in need of psychiatric hospitalization. She found Woods to be "very manic and psychotic" and recommended hospitalization. She arranged for Woods to go to Louisiana to Stonewall Psychiatric Facility. As stated, the original file the social worker created has been destroyed. The State objected that the testimony was not relevant to anything that occurred on December 2nd. Defense counsel argued that the evidence was relevant to negate the *mens rea* of the offense and argued that the evidence was more probative than prejudicial under a Rule 403 balancing test. *See* TEX.R. EVID. 403. The prosecutor conceded that evidence relevant to the night of December 2, 2002, would be admissible, but argued that the witness did not see Woods "until well after that and can offer no evidence to this jury concerning the actual events or her mental health at the time of the event." The trial court sustained the State's objection.

The trial court sustained the State's objection to testimony from the roommate that Woods was bipolar, evidently because the witness had used a medical term in her response. The trial court also sustained an unspecified objection to the roommate's testimony that "I know she had this disorder" and sustained a relevance objection to a question regarding whether Woods sometimes did not take her medication.

The trial court sustained the State's relevance objection to defense counsel's question to the justice of the peace regarding whether Woods was able to sign the magistrate's documents. The trial court instructed the jury to disregard the response that Woods was unable to sign her name at that time. The trial court also sustained a relevance objection regarding why there were two signatures on the notice to counsel, a relevance objection regarding events that occurred on December 5, and a third relevance objection to asking whether Woods's mother instructed Woods to bring anything home with her. During Woods's mother's testimony, the trial court sustained relevance objections to her statements that she did not want Woods to drive in the state Woods was in and that she signed the magistration because Woods was unable to participate in the proceeding. Finally, the trial court sustained a relevance objection to a question to Woods's father regarding whether they were able to reach an amicable settlement agreement for the insurance claims. The trial court warned defense counsel that "[i]f you are going to inquire about her condition several days after the incident, [the court is] going to sustain the objection."

On appeal, Woods contends the trial court excluded testimony about Woods's mental health that was relevant to negate the element of *mens rea*. "[T]estimony of a mental disease or defect that directly rebuts the particular *mens rea* necessary for the charged offense is relevant and admissible unless excluded under a specific evidentiary rule." *Ruffin v.*

*State,* 270 S.W.3d 586, 588 (Tex.Crim.App. 2008).

In this case, lay evidence was admitted to rebut the State's evidence that Woods intentionally hit the officer's vehicle. The jury learned that Woods was very depressed the day before the incident, that Woods was on some unidentified medication, that Woods was talking to herself or to the television, that she had done so before, and that her behavior and inability to engage in conversation caused sufficient concern that her roommate called Woods's parents and told them that Woods was behaving erratically. The jury also learned that Woods's mother talked to Woods the day before the incident and had determined that her daughter was not fit to drive. The jury heard evidence that Woods was not clothed at the time of the arrest, and that she behaved strangely immediately after the assault, while being transported to the jail, and upon book-in at the jail. Thus, the jury heard testimony that Woods exhibited some manner of mental impairment.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R. EVID. 401. The State was required to prove that Woods acted intentionally or knowingly, that is, that Woods either acted with a conscious objective or desire or with awareness that her conduct was reasonably likely to cause the result. *See* TEX. PEN.CODE ANN. § 6.03 (Vernon 2003). Almost all of the excluded evidence concerned events that occurred three days after the incident. The lay testimony regarding Woods's behavior at the jail could have provided the jury with insight into the continuing nature of the behavior Woods exhibited at the time of the incident but provided no insight into

her thoughts or perceptions at the time of the offense. The social worker's observation that Woods was "very manic and psychotic," together with her recommendation that Woods be hospitalized, are facts that tend to make it slightly more probable that Woods was suffering from some sort of mental illness three days earlier. Significantly, however, Woods's proffer does not include any evidence explaining a causal link between her mental illness and her conduct at the time of the offense.

In *Ruffin,* the defendant "contended that he was suffering from severe delusions and believed that he was shooting at Muslims, not police officers." *Ruffin,* 270 S.W.3d at 587. The trial court excluded the testimony of a psychologist that "a person who is delusional typically believes that his delusions are true." *Id.* at 590. The psychologist also expressed his professional opinion that the defendant was suffering from psychotic symptoms on the day of the offense and that he " 'was not fully aware of the effects his behavior was having on other people.' " *Id.* The Court of Criminal Appeals reasoned that the excluded evidence was "clearly relevant to the issue of whether appellant intended to shoot at police officers during the standoff or whether, because of a mental disease and the delusions that he suffered as a result of that disease, he believed that he was shooting at Muslims or some other figment of his mind." *Id.* at 596.

The evidence excluded in this case is not as probative of the issue of intent as was the psychologist's testimony in *Ruffin.* *See id.* at 596–97. In this case, assuming Woods was in a psychotic state when she hit Deputy Piper's vehicle, none of the excluded evidence explains how her psychotic state affected her ability to perceive that Piper was a public servant or demonstrates that Woods was so delusional that she was unaware that she was striking his

vehicle. Unlike *Ruffin,* the evidence excluded in this case does not explain the psychological significance of the observational evidence admitted at trial. *See id.* at 596–97. Thus, the trial court could have determined that the proffered evidence did not have a tendency to make the determination that Woods's conduct was intentional or knowing less probable than it would be without the evidence. *See* Tex.R. Evid. 401.

■ Furthermore, assuming that the evidence was relevant, the trial court was within its discretion to exclude the evidence on the grounds that the probative value of the evidence of Woods's hospitalization three days after the incident was substantially outweighed by the danger that the evidence would confuse the issues. *See* Tex.R. Evid. 403. Specifically, without being tied to Woods's actions at the time of the offense or having its significance explained in terms of the effect of her mental illness on her perceptions, the fact of her hospitalization in a mental health facility might merely evoke fear or pity and thus, affect the jury in some indelible and irrational way. The trial court's rulings were within the zone of reasonable disagreement. *See Montgomery v. State,* 810 S.W.2d 372, 391–92 (Tex.Crim.App.1991) (opinion on rehearing). We overrule the issue and affirm the judgment.

AFFIRMED.