PD-1624-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/15/2015 3:58:44 PM
Accepted 12/15/2015 4:41:44 PM
ABEL ACOSTA
CLERK

NO. _____

## IN THE

## COURT OF CRIMINAL

## APPEALS

## OF TEXAS

**WILLIAM GERARD PALMER,**
Petitioner
V.
**THE STATE OF TEXAS,**
Respondent

**Petition in Cause No. F12-00445-K**
**From the Criminal District Court No. 4 of**
**Dallas County, Texas and**

**The Court of Appeals for the**
**Fifth District of Texas**

## PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

December 15, 2015

ABEL ACOSTA, CLERK

**Douglas H. Parks**
**State Bar No. 15520000**
**321 Calm Water Lane**
**Holly Lake Ranch, TX 75765**
**903-769-3120**
**903-769-3465  - Telefax**
**doughparks@aol.com**

**ATTORNEY FOR PETITIONER**

***ORAL ARGUMENT REQUESTED***

## IDENTITY OF PARTIES AND COUNSEL

**Trial Judge:**

Hon. Dominique Collins
Criminal District Court No. 4
133 N. Riverfront Drive
Dallas, TX 75207

**Petitioner:**

William Gerard Palmer
Inmate #1924119-Michael Unit
2664 FM 2054
Tennessee Colony, TX 75886

**Trial Counsel:**

William E. "Karo" Johnson
State Bar No.10804500
3300 Oak Lawn, Suite 600
Dallas, TX 75219

Philip Hayes
State Bar No. 24012803
3300 Oak Lawn, Suite 600
Dallas, TX 75219

Valarie Tabor
State Bar No. 24025912
Public Defender's Office
133 N. Riverfront Drive
Dallas, TX 75219

Douglas H. Parks
State Bar No. 15520000
321 Calm Water Lane
Holly Lake Ranch, TX 75765

Andrea Handley
Assistant District Attorney
133 N. Riverfront Drive
Dallas, TX 75219

Justin Lord
Assistant District Attorney
133 N. Riverfront Drive
Dallas, TTX 75219

**Appellate Counsel:**

Christine Womble
Assistant District Attorney
133 N Riverfront Drive
Dallas, Tx 75219

Douglas H. Parks
321 Calm Water Lane
Holly Lake Ranch, TX 75765

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL.......................................................................ii

TABLE OF CONTENTS...........................................................................................iii

INDEX OF AUTHORITIES.......................................................................................iv

STATEMENT REGARDING ORAL ARGUMENT......................................................2

STATEMENT OF THE CASE....................................................................................2

STATEMENT OF PROCEDURAL HISTORY.................................................................3

GROUND FOR REVIEW .......................................................................................3

      The Appellate Court erred in finding that the trial court did not abuse its discretion by excluding Petitioner's expert's testimony regarding his diminished capacity to form the culpable mental state for capital murder.

REASONS FOR REVIEW........................................................................................4

ARGUMENT......................................................................................................4

PRAYER FOR RELIEF..........................................................................................7

CERTIFICATE OF SERVICE...................................................................................8

CERTIFICATE OF COMPLIANCE............................................................................8

APPENDIX.......................................................................................................9

# INDEX OF AUTHORITIES

CASE LAW:

*Arcila v. State,*
      834 S.W.2d 357 (Tex. Crim. App. 1992)...................................................................4

*Clark v. Arizona,*
      548 U.S. 735 (2006)........................................................................................5

*Jackson v. State,*
      160 S.W.3d 568 (Tex. Crim. App. 2005).............................................................4,6

*Ruffin v. State*,
      270 S.W.3d 586 (Tex. Crim. App. 2008).............................................................4,6


STATUTES:

TEX. CODE CRIM. PROC. art. 38.36(a)............................................................................6

NO. _____

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

---

WILLIAM GERARD PALMER,
                                        Petitioner
                    v.

THE STATE OF TEXAS,
                                        Respondent

---

Petition in Cause No. F12-00445-K
From the Criminal District Court No. 4  of
Dallas County, Texas and

The Court of Appeals for the
Fifth District of Texas

---

PETITION FOR DISCRETIONARY REVIEW

---

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS
OF TEXAS:

WILLIAM GERARD PALMER petitions the Court to review the judgment

affirming his conviction for capital murder in Cause No. F12-00445-K.

## STATEMENT REGARDING ORAL ARGUMENT

In the event this petition is granted, the Petitioner requests oral argument. Argument would assist the Court because resolution of the ground for review depends upon a detailed exploration of the facts of the case. Further, oral argument would provide this Court with an opportunity to question the parties regarding their positions.

## STATEMENT OF THE CASE

Appellant was charged by indictment with capital murder in violation of TEX. PENAL CODE §19.03(a)(7)(A). The indictment alleged that Appellant, on or about January 26, 2012, in Dallas County, Texas, did then and there intentionally and knowingly cause the death of an individual, namely, RAYMOND DAVIS, by stabbing and cutting him with a knife, a deadly weapon, and a box cutter, a deadly weapon, and a bladed object, a deadly weapon and during the same criminal transaction did then and there intentionally and knowingly cause the death of another individual, to-wit: MARY DAVIS, by stabbing and cutting her with a knife, a deadly weapon, and a box cutter, a deadly weapon, and a bladed object, a deadly weapon.

2

(CR-17 )[1] Appellant entered a plea of not guilty. (RR4 - 04) He was afforded a trial on the merits, in the presence of a jury who found him guilty of the offense as charged. (CR -504). The State did not seek the death penalty and Appellant's punishment was fixed at life confinement in the Institutional Division of the Texas Department of Criminal Justice, pursuant to TEX. PENAL CODE § 12.31(a).

## PROCEDURAL HISTORY

The judgment of Petitioner's conviction was entered on April 14, 2014. Petitioner's notice of appeal was timely filed. On November 9, 2015, the Fifth District Court of Appeals issued an unpublished opinion by Justice Elizabeth Lang-Miers affirming Petitioner's conviction. Motion for rehearing was not filed.

## GROUNDS FOR REVIEW

### GROUND FOR REVIEW NO. 1

**THE APPELLATE COURT ERRED IN FINDING THAT THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY EXCLUDING PETITIONER'S EXPERT'S**

3

---

[1] As used in this Petition, the record citation CR refers to the clerk's record. RR1 through RR9 designates, in chronological order, volumes one through nine of the court reporter's record. Exhibits are designated at DX (Defendant's Exhibits) and SX (State's Exhibits).

**TESTIMONY REGARDING HIS DIMINISHED CAPACITY TO FORM THE CULPABLE MENTAL STATE FOR CAPITAL MURDER.**

## REASONS FOR REVIEW

The Fifth Court of Appeals affirmed the conviction in this case by deciding an important question of law in a way that conflicts with applicable decisions of the Court of Criminal Appeals and the Supreme Court of the United States  The Fifth Court of Appeals did not discharge its duty of review to conscientiously and impartially apply the law of *Jackson v. State*, 160 S.W.3d 568 (Tex. Crim. App. 2005) and *Ruffin v. State*, 270 S.W.3d 586 (Tex. Crim. App. 2008), to a fair consideration of all the evidence.  *See Arcila v. State*, 834 S.W.2d 357, 360-61 (Tex. Crim. App. 1992).

## ARGUMENT

The opinion of the Court of Appeals fairly sets out the facts as they relate to Petitioner's Ground of Review, except as specifically set out below.

"Evidence tending to show that a defendant suffers from mental disease and lacks capacity to form mens rea is relevant to rebut evidence that he did in fact form

the required mens rea at the time in question." *Clark v. Arizona*, 548 U.S. 735, 792 (2006).

The trial court excluded the testimony of Dr. Kristi Compton that, based upon her examinations of Petitioner, as well as his history and conduct, there was a probability that Petitioner had a diminished capacity to form the requisite mens rea for the commission of the charged offense. (RR6:6-10)

The trial court excluded the testimony on the grounds that the testimony "would not help the jury" and that Dr. Compton could not say with 100 per cent certainty that he could not form the requisite mens rea. (RR5:278)

It appears that the Court of Appeals endorses the requirement that Dr. Compton had to be 100 per cent certain for her opinion to be admissible. The Court Appeals mis-characterized Dr. Compton's proffered testimony by stating that it "did not suggest that the alleged diminished capacity prevented appellant from forming the intent to kill his in-laws, or any person" and "Dr. Compton specifically testified that she could not offer an opinion about whether appellant formed the intent to commit the murders." This appears to be another way of saying that an expert must be 100 per cent certain in her opinion before the opinion is *admissible.* That is so because Dr. Compton did offer an opinion which was based in likelihood or probability, but

5

not in certainty. Of course, that opinion did "suggest" that petitioner had a diminished capacity to form the requisite mens rea to commit the murders.

Trial courts routinely allow medical examiner's "reasonable medical probability" testimony and all DNA expert testimony is admitted based upon probability. It is the jury's job to determine what weight, if any, to give the testimony.

Mens rea is an element of capital murder that the State is required to prove and an accused citizen is constitutionally entitled to have a jury make the determination whether it has met that burden, beyond a reasonable doubt.

Both *Jackson v. State*, 160 S.W.3d 568, 574 (Tex. Crim. App. 2005) and *Ruffin v. State*, 270 S.W.3d 586, 596 (Tex. Crim. App. 2008) both acknowledge that expert testimony to negate mens rea is appropriate and that such testimony is relevant and admissible, unless excluded under a specific evidentiary rule.

The *Ruffin* court also addressed the importance of CODE CRIM. PROC., art. 38.36[2] where a defendant is being prosecuted for murder. That Court wrote:

6

---

[2] Art. 38.36(a) provides: "In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense."

We quoted article 38.36 in *Jackson* for the unremarkable proposition that both the State and defendant may offer testimony as to 'all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.' This is one of the few Texas statutes that explicitly states the obvious: evidence offered by either the defense or prosecution is relevant (and presumptively admissible) to prove or disprove the pertinent *mens rea* at the time of the offense.

*Id.* at 596.

## PRAYER FOR RELIEF

For the reasons stated, the Petitioner was denied a fair trial in Cause No. F12-00445-K. Therefore, Appellant prays that this Court grant his petition for discretionary review and upon reviewing the judgment entered below, reverse this Cause and remand it for a new trial.

Respectfully submitted,

/s/ Douglas H. Parks
DOUGLAS H. PARKS
State Bar No. 15520000
321 Calm Water Lane
Holly Lake Ranch, Texas 75765
(214) 521-2670
(903) 769-3465 - Telefax
doughparks@aol.com
ATTORNEY FOR PETITIONER

7

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Petition for Discretionary Review has been served, via United States mail to Christine Womble, Assistant District Attorney, 133 N. Riverfront Blvd., LB-19, Dallas, Texas 75207-4399 and on the State Prosecuting Attorney, P. O. Box 12405, Austin, Texas 78711, by United States mail on this the 7th day of December, 2015.

/s/ Douglas H. Parks
DOUGLAS H. PARKS

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Petition for Discretionary Relief contains 1,324 words. It is printed in 14-point variable space type with footnotes in 12-point type. (Word count by Word Perfect).

/s/ Douglas H. Parks
DOUGLAS H. PARKS

# EXHIBIT A



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00671-CR

**WILLIAM GERARD PALMER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 4**
**Dallas County, Texas**
**Trial Court Cause No. F12-00445-K**

## MEMORANDUM OPINION

Before Justices Bridges, Lang-Miers, and Myers
Opinion by Justice Lang-Miers

Appellant, William Gerard Palmer, appeals his conviction for capital murder. He challenges the trial court's exclusion of his expert's testimony regarding diminished capacity and failure to include a lesser included instruction on manslaughter in the jury charge. In a cross-issue, the State argues that the judgment does not correctly reflect appellant's sentence. For the reasons that follow, we resolve appellant's issues against him, sustain the State's cross-issue, modify the judgment, and affirm the judgment as modified.

### FACTUAL AND PROCEDURAL BACKGROUND

Early in the morning on January 26, 2012, appellant drove from his home in Sachse to the home of Ray and Mary Davis, his in-laws, in Dallas where his estranged wife was staying the night. Appellant parked his van down the street from the Davises' house, walked to the house, got in his wife's car, and waited. When his wife came out to her car to get clothes for work,

appellant attacked her with a knife. She ran screaming into the house with appellant chasing her and stabbing her the entire way. She died from her injuries. Her half-sister, Kelley, was also staying at the Davises' house with her six-year-old daughter. Appellant's father-in-law tried to stop appellant, and appellant stabbed him 19 times, killing him. Kelley realized it was futile to try to stop appellant, and she ran upstairs to get her child. She passed her stepmother (appellant's mother-in-law), who was headed downstairs to see what was going on. Kelley and her daughter hid in a closet; Kelley called 911. Appellant stabbed his mother-in-law 31 times. Kelley heard appellant walking up the stairs and opening doors, looking for her, as she was talking to the 911 operator. Appellant did not find her and eventually left the house and drove home. The police arrived while Kelley was on the phone with the 911 operator.

Appellant arrived home, showered, and got ready for work. His fingers had been cut rather severely during the murders, and he dripped blood in his van and house. He pretended that he cut himself to explain the injuries and blood to his three children (the youngest was 17 years old at that time). He also poured carpet-cleaning products that he used in his work all over the van to cover up the blood. After he had cleaned up, he drove to Taco Bueno for a Diet Coke and a sausage burrito. The police were on the lookout for him and arrested him in the drive-through lane.

The State indicted appellant for capital murder of his father-in-law by stabbing him with a knife and by killing another (his mother-in-law) in the same criminal transaction. The State did not seek the death penalty.

Appellant pleaded not guilty. Although he did not dispute that he killed his in-laws, he did not claim he was insane at the time of the offense and, instead, contended that he suffered from diminished mental capacity that prevented him from having the *mens rea* required for capital murder.

–2–

At a hearing outside the presence of the jury, appellant offered testimony from three expert witnesses about his alleged diminished capacity: Dr. Kristi Compton, a clinical and forensic psychologist; Dr. Antoinette McGarrahan, a psychologist specializing in forensic psychology and neuropsychology; and Dr. Jonathan Lipman, a neuropharmacologist. Through the experts' testimony, appellant sought to prove that he had a history of anxiety, depression, and other mental conditions that doctors were attempting to control through various medications, but were having difficulty with controlling the undesirable side effects of the medications. When his wife left him about two weeks before the murders, his depression worsened, and his medications were changed, adversely affecting his brain and mental state. He contended that the experts' testimony would show that he did not have the specific intent to kill his in-laws at the time of the murders. The trial court said it would permit Dr. McGarrahan's and Dr. Lipman's testimony, but not Dr. Compton's.

At the hearing, Dr. Compton had testified that appellant told her he went to his church, talked to the pastor and the pastor's wife, and they told him "there was demonic oppression and this was the cause of his wife leaving him . . . ."[1] Appellant told Dr. Compton "as the days went on, he began talking to family and talking to the church members and he came to believe that this was a demonic or spiritual oppression and he had to rid his wife of the demonic forces." Appellant did not tell Dr. Compton that he went to his in-laws' house for the purpose of ridding his wife of demonic forces; he told her he went to the in-laws' house, "stayed in his van and was praying and calling out the names of the demons. . . . And that is his last recollection." According to Dr. Compton, appellant's next recollection was that he was back at his house talking briefly to his daughter. Dr. Compton testified that there was a "probability" that

---

[1] The evidence was undisputed that appellant's wife was addicted to the game Mafia Wars. Appellant told one of his daughters "that Mafia Wars was surrounded by demons" and that his wife "was surrounded by demons . . . because she played Mafia Wars too much."

appellant's reason for going to his in-laws' house and murdering three people was "his belief that there was demonic possession[.]"

Dr. Compton testified that she believed there was a probability that appellant "was in a diminished mental state at the time of the killing[s]," but she could not say that "for sure." She said if allowed to testify she would offer the opinion that appellant has a mental disease or defect, there were "factors that would indicate he was in a diminished mental state" at the time of the murders and "there are also factors that would indicate that he was not" in a diminished mental state at the time of the murders. She said, "Ethically, I cannot say one way or the other if he formed the intent to kill [his in-laws] and his wife."

The trial court ruled that it would not permit Dr. Compton to testify because, despite the doctor's qualifications, her testimony would not help the jury. The court reasoned that Dr. Compton's testimony "would probably confuse them more than anything and muddy up things because she doesn't have – she didn't say he's insane, she didn't say he has diminished capacity, . . . ."

The next day, appellant asked to make an offer of proof with regard to Dr. Compton's testimony, and Dr. Compton testified that appellant "probably could not form the requisite mental state" to commit these murders. Defense counsel asked Dr. Compton to explain how she arrived at that opinion, and she explained the bases for her opinion, including appellant's history of mental issues (major depressive disorder, anxiety disorders, possible bipolar condition, and others) and his current stressors (financial and marital). But she also said appellant had no history of domestic violence, which would normally be associated with such a violent crime. Additionally, she said "it's highly unusual that somebody would leave one living witness . . . who can clearly identify him . . . . Secondly, he just went home and then went to Taco Bueno. It would be much more rational if he had, you know, full capacity to murder everybody and then

–4–

take off to Mexico or some place." She also said appellant did not appear to have a negative relationship with his in-laws, and "[t]o kill them as well did not seem completely rational to me. A rational response, if he just wanted to kill his wife is wait for her to get off work, . . . or find some time or some place when there are not other people around." She testified, "Those are the things that caused me to pause. There is a likelihood or probability that he was in a diminished mental state." The trial court again excluded Dr. Compton's testimony.

The State presented its evidence to the jury, including evidence that appellant did not act unusual in the days leading up to the murders, other than deciding to attend church after having not attended for over ten years. In his defense, appellant presented, among other evidence, expert testimony about his "long history of major depressive disorder," anxiety, poor self-esteem, impulsivity, attention deficit disorder, and "borderline and dependent personality traits" such as "rapidly changing moods, unstable relationships with others, a lack of a sense of who he is . . . where they fit [sic] into the world, what their [sic] role is in society." He also presented evidence of the medications he was taking and the effects of those medications on his brain, including exacerbating his depression and "combining to produce a state of suicidal homicidality."

Appellant asked for jury instructions on manslaughter and criminally negligent homicide, but the trial court refused those requests. The jury found appellant guilty of capital murder, and the court assessed appellant's punishment at incarceration for life without the possibility of parole.

**EXPERT TESTIMONY**

In issues one and two, appellant argues that the trial court violated (1) his due process right to present evidence and (2) his right to trial by jury by excluding Dr. Compton's testimony about "his diminished capacity to form the requisite *mens rea* to commit the offense of capital murder."

**Applicable Law and Standard of Review**

Texas law presumes that a criminal defendant intended the natural consequences of his acts. *Ruffin v. State*, 270 S.W.3d 586, 591 (Tex. Crim. App. 2008). Evidence that is relevant to negate that intent, including evidence of a defendant's history of mental illness, mental diseases, or defects, can be admissible. *See id*.; TEX. CODE CRIM. PROC. ANN. art. 38.36(a) (West 2005) (stating that in prosecutions for murder, "the state or the defendant shall be permitted to offer testimony . . . going to show the condition of the mind of the accused at the time of the offense"). However, evidence that a mental condition, other than insanity, prevented a defendant from having the *capacity* to form the requisite *mens rea* is not admissible. *Jackson v. State*, 160 S.W.3d 568, 574–75 (Tex. Crim. App. 2005).

We review a trial court's decision to exclude expert testimony about a defendant's mental condition for an abuse of discretion. *See id*. at 574. A trial court has discretion to exclude evidence of mental illness if the evidence does not "truly negate the required *mens rea*." *Ruffin*, 270 S.W.3d at 595–96; *Jackson*, 160 S.W.3d at 574.

**Analysis**

Appellant argues that an expert's testimony is admissible if (1) the expert is qualified, (2) the subject matter is appropriate for expert testimony, and (3) the testimony will assist the jury. *See Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006). He argues that the trial court's basis for excluding Dr. Compton's testimony was because her testimony would not assist the jury, but he argues that her "testimony was no more complicated or confusing than the

–6–

testimony of the other experts allowed to testify." He argues that Dr. Compton did not have to be 100% certain about his diminished capacity for the evidence to be admissible to rebut the State's evidence of *mens rea*.

The *mens rea* for capital murder is intentionally or knowingly causing the death of more than one person during the same criminal transaction. TEX. PENAL CODE ANN. §§ 19.02(b)(1) (West 2011), 19.03(a)(7)(A) (West Supp. 2014). Even if appellant was suffering from diminished mental capacity at the time of the murders, Dr. Compton's testimony did not suggest that the alleged diminished mental capacity prevented appellant from forming the intent to kill his in-laws, or any person. *See Mays v. State*, 318 S.W.3d 368, 381–82 (Tex. Crim. App. 2010) (excluded evidence did not show appellant intended to shoot someone other than police officers he shot or did not intend to shoot any person); *Woods v. State*, 306 S.W.3d 905, 909–10 (Tex. App.—Beaumont 2010, no pet.) (excluded evidence not probative of intent because did not explain how psychotic state affected defendant's ability to perceive person was public servant); *cf. Ruffin*, 270 S.W.3d at 596–97 (evidence of defendant's mental condition admissible to show defendant thought he was shooting at Muslims when actually shooting at police officers). And Dr. Compton specifically testified that she could not offer an opinion about whether appellant formed the intent to commit the murders. Instead, her testimony appeared to be an explanation for why appellant stabbed his wife and in-laws rather than evidence negating intent. *See Mays*, 318 S.W.3d at 381–82.

Having reviewed Dr. Compton's proffered testimony, we conclude that it did not truly negate the *mens rea* for the offense and the trial court did not abuse its discretion by refusing to allow her to testify. We resolve issues one and two against appellant.

**JURY CHARGE**

–7–

In issue three, appellant argues that the trial court erred by refusing his request to instruct the jury on the lesser included offense of manslaughter. The State contends that appellant did not object to the charge on this basis and, regardless, the trial court did not err.

**Applicable Law and Standard of Review**

When an appellant raises jury charge error, we first determine whether the jury charge contained error. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). If there is no error, our inquiry stops. *Id.* at 443.

We apply the *Aguilar/Rousseau* test to determine whether an instruction on a lesser included offense should have been given to the jury. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). The first step is to determine whether the lesser offense is included within the greater offense. *See id.* The State concedes in this case that manslaughter is a lesser included offense of capital murder; consequently, we proceed to the second step, which is to determine whether the evidence showed that if appellant is guilty, he is guilty only of the lesser offense. *Id.* at 382, 385. The evidence must be "more than mere speculation—it requires affirmative evidence that both raises the lesser[]included offense and rebuts or negates an element of the greater offense." *Id.* at 385.

As distinguished from the capital murder culpable mental state of intentional or knowing conduct, manslaughter requires reckless conduct that causes another's death. TEX. PENAL CODE ANN. § 19.04(a) (West 2011). Conduct is "reckless" when the actor "is aware of but consciously disregards a substantial and unjustifiable risk that . . . the result will occur." *Id.* § 6.03(c). To be entitled to an instruction on manslaughter, "there must be evidence of a lack of intent to kill and evidence that [appellant] acted recklessly while ignoring a known risk." *Arnold v. State*, 234

S.W.3d 664, 672 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *see Cavazos*, 382 S.W.3d at 385.

We review a trial court's decision to submit or deny a lesser included offense instruction for an abuse of discretion. *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004).

**Analysis**

Appellant argues that he would have been entitled to a charge on manslaughter if the trial court had not excluded Dr. Compton's testimony, and that, even without her testimony, the testimony of his other experts supports a manslaughter charge. We disagree.

Dr. Compton expressly testified that she could not offer an opinion about whether appellant acted with intent at the time of the murders, and her testimony about appellant's alleged diminished mental capacity did not suggest that appellant acted only recklessly at the time of the murders. Consequently, Dr. Compton's proffered testimony, if allowed, would not have supported a charge on manslaughter.

With regard to Dr. McGarrahan and Dr. Lipman, their testimony consists of over 100 pages in the reporter's record, but appellant does not cite us to any of their specific testimony to support his argument that he was entitled to a manslaughter charge. Instead, he makes the general argument that "Dr. McGarrahan testified that a number of mental and personality issues, especially a history of depression which, with stressors, can cause a person to lose touch with reality." Even if that is true, Dr. McGarrahan did not link these "mental and personality issues" to appellant's culpable mental state at the time of the murders. *See Mays*, 318 S.W.3d at 381–82; *Woods*, 306 S.W.3d at 909–10. She did not testify that appellant had lost "touch with reality" at the time of the murders and, as a result, did not have the intent to kill. And, in fact, as pointed out by the State in its appellate brief, when Dr. McGarrahan was asked whether appellant "could

–9–

not form the requisite intent to commit this offense," she said, "I'm not here to provide an opinion one way or another on that."

Appellant also makes the general statement that "Dr. Lipman testified that the anticonvulsants being given to Appellant were very likely exacerbating his depression and that his mental condition was getting worse, possibly leading to a dissociative or psychotic state." Dr. Lipman testified about the various medications appellant was taking, the effects they can have on a person's brain, and said "if [appellant] was acting under the belief that he was responding to the needs of demon possessions, then I consider that psychotic." Again, however, Dr. Lipman did not link appellant's alleged mental condition to a culpable mental state at the time of the murders. Dr. Lipman did not offer an opinion that appellant's alleged psychosis negated a specific intent to kill, nor did he opine that appellant's alleged psychosis showed he acted only recklessly in causing his in-laws' deaths. *See Mays*, 318 S.W.3d at 381–82; *Woods*, 306 S.W.3d at 909–10.

Having reviewed the testimony of both defense experts, we conclude that the trial court did not abuse its discretion by refusing to instruct the jury on the lesser included offense of manslaughter because there is no evidence from which a rational jury could have concluded that appellant acted only recklessly when he murdered his in-laws.[2] *See Cavazos*, 382 S.W.3d at 385.

We resolve issue three against appellant.

**THE STATE'S CROSS-ISSUE**

In its cross-issue, the State argues that the judgment reflects appellant was sentenced to life in prison when it should reflect he was sentenced to life in prison without the possibility of parole. During the sentencing phase, the trial court stated, "And, sir, the jury, having found you

---

[2] Because we conclude that the jury charge did not contain error and no harm analysis is required, we do not need to address the State's contention that appellant did not object to the jury charge.

guilty of capital murder, I assess your punishment at life in prison without the possibility of parole." *See* TEX. PENAL CODE ANN. § 12.31(a)(2) (West Supp. 2014) (in capital murder case when death penalty not sought, mandatory sentence is life without parole). When the sentence set out in the judgment conflicts with the oral pronouncement, the oral pronouncement controls. *Thompson v. State*, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003). The remedy is to reform the judgment to reflect the sentence orally pronounced. *Id.* Consequently, we sustain the State's cross-issue and modify the judgment to reflect the sentence orally pronounced.

## CONCLUSION

We modify the judgment to reflect the sentence of incarceration for life without the possibility of parole and affirm the judgment as modified.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do not Publish
TEX. R. APP. P. 47.2(b)

140671F.U05

–11–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

WILLIAM GERARD PALMER, Appellant

No. 05-14-00671-CR　　V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas
Trial Court Cause No. F12-00445-K.
Opinion delivered by Justice Lang-Miers.
Justices Bridges and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to reflect the punishment assessed as "LIFE YEARS WITHOUT THE POSSIBILITY OF PAROLE INSTITUTIONAL DIVISION, TDCJ."

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 9th day of November, 2015.